IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 21, 2007

Charles R. Fulbruge III
Clerk

No. 07-30085

DARCY GUIDRY; SALLY GUIDRY

Plaintiffs–Appellants

V.

AMERICAN PUBLIC LIFE INSURANCE CO

Defendant–Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before BENAVIDES, CLEMENT, and PRADO, Circuit Judges.

BENAVIDES, Circuit Judge:

Appellants Darcy and Sally Guidry seek a reversal of the district court's dismissal of their claims against Appellee American Public Life Insurance Company ("APL") pursuant to APL's Motion for Judgment on the Pleadings. For the following reasons, we reverse and remand.

I. BACKGROUND

On March 31, 1993, Darcy Guidry applied for an APLIC-3 Cancer and Specified Disease Policy (the "Policy"), which APL issued to him thereafter.[1] This Policy is a cash benefit policy that provides supplemental coverage to assist

---

[1] The Policy additionally covers Guidry's wife, Sally Guidry, who is also a party to the current action.

in offsetting costs arising out of the treatment of diagnosed cancer and other specified diseases. The Policy contractually obligates APL to pay a set percentage (ranging between 100% and 110%) of the "actual charges" incurred for various treatments.[2] The term "actual charges" is not defined in the Policy.

Until August 2001, APL paid "actual charges" benefits based on the "billed amount"–i.e., the amount originally printed on the medical bill. In August 2001, unbeknownst to its insureds, APL changed its payment practices and paid insureds based on one of two methods: (1) paying "actual charges" benefits based on the "actual expenses" incurred by the insured–that is, the reduced amount of the medical bill after any contractual or statutory reductions ("the discounted bill"); or (2) paying the contractually established percentage (e.g. 110%) of 75% of the "billed amount."[3]

According to APL, it changed its payment practices "[i]n response to the reality of negotiated discounts by medical providers to the insurers and other responsible third parties." Over the course of many years, a substantial gap developed between the "billed amount" and the actual prices that providers have agreed in advance to accept as payment in full for their medical services, resulting in few patients paying anything close to the "billed amount."

---

[2] For the treatments at issue in this case, chemotherapy and radiation therapy, the Policy pays 110% of the "actual charges."

[3] A numerical example of these two methods of benefit payment is contained in Appellants' Complaint: "Serving only as an example, upon receipt of a $10,000 chemotherapy bill [APL] either pays the insured 110% of $7500 or it pays the insured 110% of the amount that bill has been discounted [by] Medicare or otherwise (for instance, $6000), but what [APL] does not do is pay 110% of the $10,000 actual charge ($11,000) as required by the contract." (Compl. ¶ VI).

According to APL, the purpose of paying the contractually established percentage of 75% of the billed amount "was to avoid delay in paying claims while awaiting definitive evidence of the charges actually incurred for a policyholder's treatment." Where APL employed this method of payment, APL claimed that it "advised its policyholders that [they] could submit evidence that [they] had incurred an expense greater than the amount of the [payment] and APL would pay the benefits based upon the amount of the actual expenses incurred."

According to America's Health Insurance Plans, Inc.'s amicus brief, this phenomenon is due to a combination of two factors: (1) the dramatic increase in the "billed amount" of hospitals and other healthcare providers, and (2) the fact that many insurance carriers have contracts with hospitals which allow their insured to pay a price that is significantly below the billed amount. Consequently, APL realized that it was "overpaying" claims by paying benefits based on the "billed amount," which no longer reflected the expenses incurred by their insureds, and changed its payment practices as described above.

Beginning in 2002, the Guidrys submitted claims to APL for Cancer Treatment Benefits under the Policy. APL's payments to the Guidrys were based on APL's post-August 2001 payment practices. On November 7, 2005, the Guidrys filed a class action petition against APL, asserting a claim for breach of contract and seeking injunctive relief and damages. The Guidrys asserted that APL failed to pay the contractually established percentage of the "actual charges" incurred for medical treatment. APL filed its answer on January 18, 2006. On March 24, 2006, APL filed its Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, contending that it performed its contractual duty under the Policy because "actual charges" unambiguously means the amount of the "discounted bill." The district court agreed with APL and granted its motion on June 29, 2006. On July 10, 2006, the Guidrys filed a Motion to Reconsider, which was denied on January 3, 2007. The Guidrys now appeal.

II. STANDARD OF REVIEW

We review a Rule 12(c) motion for judgment on the pleadings de novo. In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007), petition for cert. filed, (U.S. Nov. 26, 2007) (No. 07-713). The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. Id. The court "accepts all well-pleaded facts as true, viewing them in the light most favorable

to the plaintiff." Id. (internal quotations omitted). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, — U.S. —, 127 S. Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[4] Id. at 1965 (citation and footnote omitted).

## III. DISCUSSION

Appellants allege that the district court erred in dismissing their claims because the language "actual charges" means the "billed amount" or, at the very least, is ambiguous. APL contends, and the district court agreed, that "actual charges" unambiguously means the amount that the insured ultimately owes (i.e., the discounted bill).

As this is a diversity action regarding the interpretation of insurance policies issued in Louisiana, Louisiana's substantive law controls. Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 260 (5th Cir. 2003). Under Louisiana law, an insurance policy "is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." Cadwallader v. Allstate Ins. Co., 848 So. 2d 577, 580 (La. 2003). According to the Louisiana Civil Code, "[i]nterpretation of a contract is the determination of the common intent of the parties," LA. CIV. CODE ANN. art. 2045, and an insurance contract "shall be construed according to the entirety of its terms and conditions." LA. REV. STAT. ANN. § 22:654.

---

[4] APL contended for the first time on appeal at oral argument that the district court considered matters outside the pleadings, thereby treating its Motion for Judgment on the Pleadings as a motion for summary judgment. Whether APL is correct, however, is immaterial–as explained in Section III infra, because we find "actual charges" ambiguous, dismissal of Appellants' claims would have been inappropriate on summary judgment or judgment on the pleadings.

Whether contract language is clear or ambiguous is a question of law. Cadwallader, 848 So. 2d at 580. The words of a contract "are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." Id. (citing LA. CIV. CODE ANN. art. 2047). When a contract's language is "clear and explicit and lead[s] to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE ANN. art. 2046. If the wording of the policy is unambiguous, then the contract "must be enforced as written." Cadwallader, 848 So. 2d at 580. A contract is ambiguous, however, "when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction." Lloyds of London v. Transcon. Gas Pipe Line Corp., 101 F.3d 425, 429 (5th Cir. 1996).

When a contract is ambiguous, "the agreement shall be construed according to the intent of the parties." Kuswa & Assocs., Inc. v. Thibaut Constr. Co., 463 So. 2d 1264, 1266 (La. 1985). "Intent is an issue of fact which is to be inferred from all of the surrounding circumstances." Id. (emphasis added); see also Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co., 89 F.3d 243, 246 (5th Cir. 1996) ("[A]mbiguity in the terms of a contract gives rise to a fact question concerning the intent of the parties.") Consequently, when a contract is ambiguous, the trier of fact must resolve the factual issue of intent, and judgment on the pleadings or summary judgment is improper. See Investors Syndicate of Am., Inc. v. City of Indian Rocks Beach, 434 F.2d 871, 877-78 (5th Cir. 1970) (finding that dismissal on the pleadings was error when the contract at issue was ambiguous); Gertler v. City of New Orleans, 881 So. 2d 792, 796 (La. Ct. App. 2004) ("If the language of [a contract] is ambiguous or susceptible to

multiple interpretations, the intent of the parties must be determined and summary judgment is inappropriate.")[5]

We find that the language "actual charges" as used in the Policy is ambiguous. On the one hand, "actual charges" could reasonably mean the amount the patient was originally billed for medical services. This is the amount that the patient was "actually charged," even if the medical services provider intended to accept less from the patient's insurance carrier. On the other hand, "actual charges" could reasonably mean the amount for which the insured is actually liable based on the discounted bill. Under this interpretation, the amount originally billed for medical services is the amount "charged," and the amount of the discounted bill is the amount "actually charged."[6]

Appellants' interpretation is buttressed by its argument that when APL intended to limit the insured's recovery to the expenses the insured was ultimately liable for, they did so clearly in the Policy. For example, under the heading "Blood, Plasma and Platelets Benefit," the Policy states: "We will pay 110% of the actual charges for blood, plasma and platelets, the administration, procurement, transfusion, cross-matching, typing and processing of blood/plasma/platelets, from date of diagnosis, which was paid by You, not to exceed $5,000 per twelve (12) month period." (emphasis added). Furthermore, according to the Policy's "Schedule for Definitive Cancer Treatment Benefits,"

---

[5] Granting summary judgment on an ambiguous contract may be appropriate only in the very rare circumstance where "there is no issue of material fact concerning the pertinent intent" of the parties. Sanders v. Ashland Oil, Inc., 696 So. 2d 1031, 1035 (La. Ct. App. 1997).

[6] America's Health Insurance Plans, Inc.'s amicus brief in support of APL contends that Appellants' interpretation of "actual charges" is unreasonable because it contravenes the fundamental purpose of insurance and would lead to a windfall for Appellants. Although the fundamental purpose of ordinary health insurance coverage is to indemnify against loss from disease or illness, the purpose of a supplemental insurance policy, such as the one at issue in this case, is not only to cover medical expenses but also–according to America's Health Insurance Plans, Inc.–to provide supplemental income for "general living expenses or any other purpose." Thus, the payment of benefits in amounts exceeding actual expenses does not lead to an unreasonable result.

the payment calculation for some benefits is based on "actual charges" and others are based on "actual expenses." For example, the "Radiation Therapy and Chemotherapy Benefit" at issue here is based on "actual charges," whereas the "Alopecia Benefit" is based on "actual expenses." If we ascribe the term "actual charges" to mean "actual expenses"–as urged by APL–such a reading would render the Policy language "which was paid by You" and "actual expenses" nugatory. See Tex. E. Transmission Corp. v. Amerada Hess Corp., 145 F.3d 737, 742 (5th Cir. 1998) (under Lousiana law, "[c]ontract provisions susceptible to different meanings should be interpreted to avoid neutralizing or ignoring any of them or treating them as surplusage") (internal quotations omitted); Succession of Fannaly v. Lafayette Ins. Co., 805 So. 2d 1134, 1137 (La. 2002) ("One provision of the contract should not be construed separately at the expense of disregarding other provisions.").

APL's arguments, on the other hand, certainly support its interpretation of the Policy, but do not convince us that "actual charges" is unambiguous. First, APL argues that "actual charges" has a plain meaning. APL points to the definition of "actual" in Black's Law Dictionary 34 (6th ed. 1990), which defines "actual" as "[r]eal; substantial; existing presently in fact . . . . [o]pposed to potential, possible, virtual, theoretical, hypothetical, or nominal." Based on this definition, APL contends that the meaning of "actual charges" is clear–the discounted amount on an insured's medical bills is the amount really and actually charged and the amount originally printed on the bill is merely the "theoretical" charge for which the patient was never legally liable to pay. However, one could just as easily argue that the amount originally billed is the "real" charge because it is the amount that the medical services provider actually billed for its services–the fact that a patient turns out to be insured, and the insurance company happens to receive a discount from the medical services provider, is arguably irrelevant to the plain meaning of "actual charges."

APL next argues that interpreting "actual charges" as the amount originally printed on the bill would render the use of the word "actual" nugatory. If "actual charges" means what Appellants claim, then the Policy would have simply used the word "charges." However, as argued by Appellants and as explained above, APL's interpretation of "actual charges" would render other words in the contract nugatory–namely, "actual expenses" and "which was paid by You."

Finally, APL contends that certain key provisions of the policy use the term "expenses incurred," and this term controls and limits the term "actual charges," such that benefits that are based on "actual charges" are only payable to the extent that actual expenses were incurred by insureds for reimbursable medical services.[7] Specifically, APL points to the general "Cancer Benefit" provision, which states: "We will pay the benefits shown in the Schedule for Definitive Cancer Treatment Benefits for expenses incurred for the definitive cancer treatment." (emphasis added).

APL's argument, however, is unconvincing. First, the "Cancer Benefit" provision APL quotes is simply meant to identify, or point to, which type of bills are subject to the benefits enumerated in the "Schedule for Definitive Cancer Treatment Benefits."[8] Second, giving controlling effect to the "expenses incurred" language would impermissibly allow language in the "Cancer Benefit"

---

[7] APL convincingly establishes that "expenses incurred" under Louisiana law means those expenses for which a person is legally liable–in this case, the discounted bill.

[8] The sentence at issue can be split into two parts: the first part of the sentence ("[w]e will pay the benefits shown in the Schedule for Definitive Cancer Treatment Benefits") specifies what benefits are to be paid and how such benefits are to be calculated–i.e., the benefits are to be calculated in accordance with the Schedule for Definitive Cancer Treatment Benefits provision; the second part of the sentence ("for expenses incurred for the definitive cancer treatment") specifies which bills are eligible for that payment. As Appellant asserts, this sentence can be restated: "We will pay those benefits shown in the schedule for definitive cancer treatment benefits for expenses associated with the definitive treatment of cancer . . . ."

8

provision, a general provision, to supercede the specific language in the "Benefits Schedule" and the "Schedule for Definitive Cancer Treatment Benefits." See Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp., 289 F.3d 373, 377 (5th Cir. 2002) ("It is a fundamental axiom of contract interpretation that specific provisions control general provisions."). Finally, if APL's contention that the "expenses incurred" language controls the payment of benefits is correct, then many benefits in the Policy would likely be invalidated because the calculation of many benefits is not based on actual expenses incurred by the patient. For example, the "First Occurrence Benefit" pays a fixed amount of "$1,100 plus an additional $55 for each policy month Your policy has been in force" and the "Home Health Care Services Benefit" pays a fixed "$33 per visit." Thus, for these benefit provisions to be effective, their payment cannot be solely based on "expenses incurred."

Consequently, the term "actual charges" as used in the Policy is ambiguous, and the district court erred in dismissing Appellants' claims.

Our conclusion is supported by the Fourth Circuit's recent decision in Ward v. Dixie National Life Insurance Co., No. 06-2022, 2007 WL 4293319 (4th Cir. Nov. 29, 2007). In Ward, the Fourth Circuit considered the interpretation of the same term "actual charges," as used in a similar insurance policy, and applied similar rules of contract interpretation under South Carolina law. Like us, the Fourth Circuit determined that the definition of "actual charges" advocated by the insurance companies (the same interpretation advocated by APL here) was "not the only one possible when the language of the policy is considered in light of its context." Id. at *4. "The words 'actual charges' could also be understood to mean the amount shown on the bill sent to the patient regardless of whether this amount is the same as the amount actually owed." Id. Thus, the Fourth Circuit concluded: "Viewed from within the four corners of the policy, the phrase is ambiguous as there is nothing to indicate whether

'actual charges' is best understood to mean the amount actually billed or the amount actually owed." Id.

Finally, we find it suspect that APL maintains that "actual charges" unambiguously means the amount of the discounted bill when APL admits that prior to August 2001 it paid all "actual charges" benefits based on the billed amount. The reality of negotiated discounts and the discrepancy between the original billed amount and the amount of the discounted bill are nothing new. It, therefore, seems very strange that a for-profit company would continue to pay benefits for years based on the larger billed amount when it was allegedly so clear that "actual charges" meant the amount of the discounted bill.

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.