IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 8, 2008

Charles R. Fulbruge III
Clerk

No. 07-40996

WILLIAM LEE MITCHELL II,

                            Plaintiff-Appellant,

v.

PAUL JOHNSON,
Also Known as Paul Johnson for District Attorney,

                            Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Texas
No. 4:06-CV-87

Before SMITH, WIENER, and HAYNES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

    William Mitchell appeals the sua sponte dismissal of his 28 U.S.C.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

§ 1985(2) claim and the remand of his supplemental state law claims to state court.  We reverse and remand.

I.

As a candidate for district attorney ("DA"), Paul Johnson directed his campaign to distribute various mailings, with Mitchell's photograph, that insinuated that Mitchell had bribed the then-district attorney in an effort to have DWI and family violence charges, among others, dropped.  Mitchell, contending the allegations were false, sued Johnson in Texas state court on February 22, 2006, alleging negligence, defamation, libel, slander, and appropriation and seeking injunctive relief.  Johnson removed to federal court.

Post-removal, Mitchell amended his complaint to bring it into compliance with federal pleading requirements and to drop his claims for slander, negligence, and injunctive relief.  In December 2006, Johnson moved to dismiss for lack of subject matter jurisdiction and to remand the supplemental state law claims to state court.  Mitchell filed a second amended complaint (the "complaint") on May 30, 2007, reasserting the slander claim and adding a claim under 42 U.S.C. § 1985(2), which provides a cause of action for an individual harmed by a conspiracy aimed at shutting down his access to federal courts.

The complaint alleged various conspiratorial activities that had occurred after he first filed suit.  The alleged conspiracy began when Johnson's lawyer threatened that if Mitchell did not drop the suit, Johnson would allege Mitchell had committed family violence, which if proven would cause Mitchell to lose his bail-bond license.  Johnson, seemingly in his individual capacity, then filed a motion to unseal records (the "motion") in state court, requesting that court to vacate the order expunging from Mitchell's record an allegation of family violence.  The complaint urged that Johnson's filing itself was illegal under Texas law.

Johnson then offered to withdraw his motion in exchange for Mitchell's

dismissing his lawsuit. In response, Mitchell requested the state court in which Johnson had filed his motion to sanction Johnson and appoint a visiting judge to determine whether to prosecute Johnson. The state court appointed the requested judge.

The complaint alleged that the following persons, among others, met to devise a plan to get Mitchell to drop his suit: Johnson; Jamie Beck, an official in the DA's office and Mitchell's former lawyer; and Ricky Perritt, Johnson's former law partner. Mitchell claims that Beck called to tell him that Johnson had considered dismissing his motion but decided not to because Mitchell had refused to drop his case. Beck allegedly also tipped off Mitchell to the fact that Johnson planned to file a new family violence case against Mitchell that Beck and Johnson thought lacked merit.

The complaint next alleged that Perritt had contacted Mitchell about the prospective family violence case. Perrit claimed that Johnson planned to request a special prosecutor to handle the case but wished to keep the prosecutor's identity secret. Perritt told Mitchell that even though the federal case and the prospective family violence case were not related, he would not represent Mitchell for free unless Mitchell dropped the federal case.

Perrit's information proved correct. On March 1, 2007, Johnson requested a court to appoint a special prosecutor but to keep the order secret by not filing it with the county clerk's office.

The federal case proceeded to discovery. In July 2007, Johnson filed a summary judgment motion challenging the sufficiency of Mitchell's § 1985(2) claim. On September 5, 2007, the district court sua sponte dismissed Mitchell's § 1985(2) claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and remanded the supplemental state law claims to state court.

## II.

## A.

We review a ruling on a rule 12(b)(6) motion de novo. Guidry v. Am. Pub. Life Ins. Co., 512 F.3d 177, 180 (5th Cir. 2007). We "accept[ ] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." Id. (citations omitted). To survive a rule 12(b)(6) motion, the plaintiff must plead sufficient facts to state a plausible claim for relief on the face of the complaint. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). The allegations must be sufficient "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (citation and footnote omitted). If the plaintiff fails to allege facts sufficient to "nudge [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." Id.

## B.

The question is whether Mitchell's complaint states a claim for relief under § 1985, which provides that

> (2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified.

> (3) . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985.

The elements of Mitchell's claim are "(1) a conspiracy between two or more persons, (2) to deter a witness by force, intimidation, or threat from attending federal court or testifying freely in a matter there pending, which (3) causes injury to the claimant." Rutledge v. Ariz. Bd. of Regents, 859 F.2d 732, 735 (9th Cir. 1988). Mitchell alleges that the actions by Johnson, Beck, and Perrit were designed to prevent him from prosecuting his defamation case while it was still pending in federal court. In particular, he claims Johnson's attempt to have his family violence record reopened and Johnson's threat of prosecuting the second family violence charge, along with the communications received from associates of Johnson relating to those actions, were attempts to deter Mitchell by intimidation or threat in this lawsuit. It is an unsettled question whether threatened or actual judicial action can rise to the level of intimidation or threat under § 1985(2). Under the facts Mitchell pleaded, we conclude that it can.

Three of our cases are implicated: Kinney v. Weaver, 367 F.3d 337 (5th Cir. 2004) (en banc);, Kimble v. D.J. McDuffy, Inc., 648 F.2d 340, 348 (5th Cir. June 1981) (en banc), overruled by Kush v. Rutledge, 460 U.S. 719 (1983); and Deubert v. Gulf Fed. Sav. Bank, 820 F.2d 754 (5th Cir. 1987).[1] Of these, the district court addressed only Deubert, which in its fundamental premises has been overruled by Kinney.

The court a quo determined that "merely attempting to persuade the Plaintiff to dismiss his case, even if by deceit, does not rise to the level of 'force, intimidation, or threat' contemplated by § 1985(2)," and it noted that we have agreed that the statute's purpose was the "insulat[ion of] witnesses, parties and grand or petit jurors from conspiracies to pressure or intimidate them in the per-

---

[1] As implied by Deubert's discussion, Kimble has not been totally eviscerated by Kush, which overruled Kimble to the extent that it required racial or class-based animus in a § 1985(2) suit. Perkins v. Gregg County, 1995 WL 836051, at *5 (E.D. Tex. Dec. 6, 1995).

formance of their duties," Nealy v. Hamilton, 837 F.2d 210, 212 (5th Cir. 1988) (quoting Brawer v. Horowitz, 535 F.2d 830, 840 (3d Cir. 1976)). This is a correct statement of law, and if the pleaded facts suggested mere deceit, this case would present a different profile. Instead, the complaint alleges outright illegal activity on the part of a sitting district attorney that rises to a level quite beyond deceit.

The earliest of the three cases, Kimble, supports a reading of § 1985(2) that would not cover even activity that rose above mere deceit. There we noted that § 1985(2), "a Reconstruction era statute intended to curtail the activities of the Ku Klux Klan, created a federal cause of action for anyone injured by another as a result of having filed lawsuits or claims for statutory benefits." Kimble, 648 F.2d at 342. The Kimble court therefore sought to cabin § 1985(2) to acts that obtained in post-bellum America and held that "[i]n light of the acts of violence that threatened the sanctity of federal courts, Congress meant Section 1985(2) to protect a party based on his physical presence while attending or testifying in court." Id. at 348. In other words, the Kimble court viewed § 1985(2) from the historical perspective in which physical intimidation was the only concern. Accordingly, the court did not extend § 1985(2) to a claim for refusal to hire in a case in which former employees alleged that various companies in the oil industry had blackballed them because the employees had filed personal injury or worker's compensation claims. Id. at 347-48.

Another important caseSSand the one relied on by the district courtSSis Deubert, in which two employees were harassed to the point of being forced to resign, i.e., constructively discharged, after they reported to the Federal Home Loan Bank Board that a vice-president of their employer was extending questionable loans. See Deubert, 820 F.2d at 756. Their federal complaint alleged that they were retaliated against for attempting to institute federal administrative and judicial proceedings. Id. at 758. Deubert held these claims were not ac-

tionable under § 1985(2). Glossing Kimble, Deubert said "alleged retaliation for 'attempting' to file a federal lawsuit or even for actually filing such a lawsuit is insufficient to state a claim under section 1985(2)," because "the statute was not intended to create a federal tort remedy for economic retaliation." Id.

This is the closest we have to a case on point, but it presents a problem: We have since recognized that claims for economic retaliation for attending federal court are cognizable under § 1985(2). In Kinney, the plaintiffs were instructors at the East Texas Police Academy ("ETPA"), a division of Kilgore College. They testified as expert witnesses for a family in a case involving a teenager who was fatally shot by a police sniper in Kerrville, Texas. The case did not involve any officers who had trained where the plaintiffs worked. After plaintiffs had testified, the president of the college began receiving letters from various police officials threatening to stop using the ETPA. The officials met with the president, and all agreed that plaintiffs would be removed from the faculty; if the plaintiffs were not removed, the officials would stop sending officers to ETPA for training. Eventually all but one of the police officials relented in their demand that the plaintiffs be fired, but they did follow through with part of their threat such that eventually the plaintiffs' enrollment fell below continued viability. One plaintiff resigned, and the other did not have his contract renewed. Plaintiffs sued under § 1985(2). Kinney, 367 F.3d at 341-46.

The primary issue in Kinney was whether the police officials could have violated the statute by conspiring to mount a campaign of economic retaliation, i.e., boycotting the plaintiffs' classes and trying to have them terminated. Id. at 351. We held that the plaintiffs were injured within the ambit of the statute because of Haddle v. Garrison, 525 U.S. 121 (1998), which says that "'third-party interference with at-will employment relationships[] states a claim for relief under § 1985(2).'" Kinney, 367 F.3d at 353 (quoting Haddle, 525 U.S. at 126).

Kinney and therefore Haddle stand for the proposition that being effective-

ly fired from an at-will position for testifying in, or attending, a federal court constitutes a sufficient injury under § 1985(2), but that is not the end of the inquiry. Just because economic retaliationSSfiringSSis a cognizable injury, it does not follow that all retaliation is of such a kind, but it does irrevocably erode the holdings of Kimble and Deubert, which are premised on the notion that economic retaliation was not the aim of the Reconstruction Congress and therefore could never be sufficient injury. But, if the theory undergirding the result in those cases was physical presence, and physical presence is no longer required, then those cases are no longer good law.

Our current understanding of § 1985(2) is that the statute seeks to ensure the fair adjudication of cases in federal court and provides a civil remedy where individuals conspire to exert untoward external pressure on parties or witnesses because of their participation in judicial proceedings. This understanding accords with the still-uncontroversial proposition that § 1985(2) requires a "nexus between the alleged conspiracy and a proceeding in federal court." Deubert, 820 F.2d at 758 (quoting Bradt v. Smith, 634 F.2d 796, 801 (5th Cir. Unit A Jan. 1981)). The conspiracy must seek to deprive the plaintiff of his right in court by physical or economic means.

Although it is true that Mitchell has not alleged a direct injury to his person or property that is in all respects analogous to losing one's job, defending frivolous or illegal lawsuits in another court can create an economic burden. The countervailing argument is that any threat in bargaining along the lines of "if you sue me, I'll sue you" might constitute a violation of § 1985(2). Of course, that is not so. Whatever decision we reach must be in accordance with the plain language of the statute. See Kinney, 367 F.3d at 351 n.14 (expressing disapproval of creating extra-textual limits on the reach of § 1985(2)). We agree with the court in Timmerman v. U.S. Bank, N.A., 483 F.3d 1106, 1124 (10th Cir. 2007), that "[l]egal claims possessing a reasonable basis in law and fact simply do not

constitute the 'force or intimidation' necessary to satisfy § 1985(2)." Id. at 1124. The undeniable implication, therefore, is that legal claims without a reasonable basis in law and fact may constitute the "force or intimidation" necessary to state a claim.

The complaint alleges that Johnson's motion had no basis in law or fact and that he used the possible state court prosecution as a bargaining chip without concern as to its basis in law or fact. As to the first claim, Texas Rule of Civil Procedure 76A(7) allows "any person [to] intervene as a matter of right at any time before or after judgment to seal or unseal court records. A court that issues a sealing order retains continuing jurisdiction to enforce, alter, or vacate that order." TEX. R. CIV. P. 76A(7). Texas Rule of Civil Procedure 76A(1) does not limit the application of the above to orders entered under its authority. On the other hand, the expunged conviction was issued pursuant to Texas Code of Criminal Procedure article 55.01, and Texas Code of Criminal Procedure article 55.02, § 4, prohibits the use of expunged records unless the court has affirmatively retained the records.

We do not need to settle whether the above characterization of Texas law is correct. Rather, because the district court has decided this case pursuant to 12(b)(6) rather than under the summary judgment regime of Federal Rule of Civil Procedure 56, our concern is whether the taken-as-true complaint states a claim for purposes of surviving a rule 12(B)(6) motion. It does.

The second claim, that Johnson used his position as DA to punish Mitchell by filing a second family violence case, would be an egregious example of intimidating a party from pursuing a claim. Of course, the allegation might not be true, and Johnson may have acted appropriately by obtaining a special prosecutor after Mitchell's wife had alleged family violence, but at the rule 12(b)(6) stage it is premature to decide that. The prudent and lawful course of action requires this case be decided on the merits.

Mitchell has alleged (1) a conspiracy (among Johnson, Beck, and Perrit, at a minimum) that sought (2) to deter him from prosecuting his case by force, intimidation, or threat (by filing an illegal state action and using Johnson's position as DA to pursue the possible family violence case) that (3) caused injury (economic damages brought about by litigating two or more cases simultaneously). It follows that Mitchell has stated a claim for which relief may be granted, thereby making dismissal pursuant to rule 12(b)(6), whether sua sponte or not, inappropriate. We therefore need not address the district court's handling of Mitchell's supplemental state law claims, because there is still a federal question in this case.

The judgment is REVERSED and REMANDED for proceedings consistent with this opinion.