# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30068
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

January 26, 2015

Lyle W. Cayce
Clerk

MT. HAWLEY INSURANCE COMPANY,

Plaintiff - Appellant

v.

ADVANCE PRODUCTS & SYSTEMS, INCORPORATED,

Defendant - Appellee

Appeal from the United States District Court
For the Western District of Louisiana
USDC No. 6:12-CV-890

Before HIGGINBOTHAM, JONES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

This appeal requires us to interpret an insurance contract. Mt. Hawley sold a commercial property insurance policy to Advance Products & Systems ("APS") covering its manufacturing facility. That policy included Business Income and Extra Expense coverage. Ten months after Mt. Hawley issued the policy, a fire substantially damaged APS's facility. During the claims-adjustment process, a dispute arose regarding the amount recoverable for lost

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-30068

business income. The district court held that the policy was ambiguous and granted partial summary judgment for APS. *Mt. Hawley Ins. Co. v. Advance Products & Sys., Inc.*, 972 F. Supp. 2d 900, 910 (W.D. La. 2013). Because we hold that the contract is unambiguous, we REVERSE the grant of partial summary judgment[1] and REMAND the case to the district court.[2]

## BACKGROUND

On November 12, 2009, Mt. Hawley issued a commercial property insurance policy to APS. The policy included two provisions that are relevant here. The first is business income coverage which, among other things, compensates the insured for income lost as a result of a covered accident. The business income coverage limit is $500,000. The second is a coinsurance clause which requires the insured to "bear a percentage of certain losses if he has chosen not to purchase a certain level of coverage."[3]  15 La. Civ. L. Treatise, Insurance Law & Practice § 10:31 (4th ed.). More simply, if APS is not fully insured—has not insured the full value of its income—the coinsurance provision limits the amount it can recover.

Exactly ten months later, on September 12, 2010, a fire damaged APS's facility in Scott, Louisiana. APS submitted a claim to Mt. Hawley for lost business income. According to APS, it lost $723,109.31 of income, but, because of the coinsurance provision, Mt. Hawley owes it only $484,989.41. Mt. Hawley argues that it only owes $217,810.21. The parties' calculations differ because

---

[1] The parties dispute how much money Mt. Hawley has already paid under the business income coverage. Thus, the district court only granted partial summary judgment.

[2] The district court certified its ruling as a final appealable order under rule 54(b). *Mt. Hawley*, 972 F. Supp. 2d at 910.

[3] A coinsurance clause serves the same purpose as a "deductible"—to require the insured to bear some loss before the insurer is required to make payment. *See* 15 La. Civ. L. Treatise, Insurance Law & Practice § 10:31 (Coinsurance "does not differ substantially from a 'deductible' or a 'retained amount,' which serves the same purpose but does so in a stated dollar amount."); BLACK'S LAW DICTIONARY 501 (10th ed. 2014) (A deductible is "the portion of the loss to be borne by the insured before the insurer becomes liable for payment.").

No. 14-30068

APS uses *actual* net income to compute the coinsurance penalty; while Mt. Hawley uses *projected* net income.

Unable to come to an agreement, Mt. Hawley sued APS seeking a declaration that the coinsurance penalty should be calculated using projected, not actual, net income. Each party moved for summary judgment. The district court held that the coinsurance provision was ambiguous and that the terms of insurance contracts are strictly construed against the insurer. *Mt. Hawley*, 972 F. Supp.2d at 910. The district court granted APS's motion, holding that Mt. Hawley must use actual net income to compute the coinsurance penalty. *Id.* Now, Mt. Hawley appeals.

**STANDARD OF REVIEW**

This Court reviews a grant of summary judgment *de novo. Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). A district court's interpretation of an insurance contract is also a matter of law that we review *de novo. Admiral Ins. Co. v. Ford*, 607 F.3d 420, 422 (5th Cir. 2010).

**APPLICABLE LAW**

Because this is a diversity case, this Court will interpret the contract using Louisiana law. *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007). Under Louisiana law, words and phrases in an insurance policy "are to be construed using their plain, ordinary and generally prevailing meaning." *Id.* At the same time, courts must construe the contract as a whole and in light of the other provisions; "[o]ne provision of the contract should not be construed separately at the expense of disregarding other provisions." *Sims v. Mulhearn Funeral Home, Inc.*, 956 So.2d 583, 589 (La. 2007) (internal citations omitted). If, after applying these principles, the contract's meaning is clear and does not lead to an absurd result, then the Court must enforce the contract as written. *Id.* But if there is an ambiguity, "the ambiguous contractual provision is generally construed against the insurer and in favor of

3

No. 14-30068

coverage." *Id.* at 589-90 (internal citations omitted). "This strict construction principle applies, however, only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations." *Id.* at 590 (emphasis added).

## DISCUSSION

The only issue here is whether the contract requires using actual or projected net income to calculate the coinsurance penalty. APS argues that the relevant language is ambiguous. Mt. Hawley argues that the contract is clear: it requires using projected net income. This Court agrees with Mt. Hawley. The contract is unambiguous because there are not two *reasonable* interpretations of the relevant language—Mt. Hawley's is the only reasonable one.

A. *The Policy's Terms*

To better understand the parties' arguments, it is necessary to review the policy's language. The policy defines several relevant terms. Under the policy business income is, among other things, the "[n]et [i]ncome . . . that would have been earned." And the amount of business income loss—i.e. the amount of revenue lost as a result of the accident—is defined as "[t]he [n]et [i]ncome of the business before the direct physical loss or damage occurred" and "[t]he likely [n]et [i]ncome of the business if no physical loss or damage had occurred."

Although the policy limit is $500,000, the policy limits the amount recoverable by imposing a coinsurance penalty. A coinsurance penalty applies only if the policy limit (here $500,000) is less than ninety percent (the coinsurance percentage) of the sum of the net income and operating expenses "that would have been earned or incurred" over a twelve-month period.[4]

---

[4] For those mathematically minded: If $500,000 < (.9 \times \text{projected net income})$, then there is a coinsurance penalty.

4

No. 14-30068

If the coinsurance penalty applies, the amount Mt. Hawley pays is calculated in three steps. The first step is to multiply the "[n]et [i]ncome and operating expense for the 12 months following the inception or last previous anniversary date" by the coinsurance percentage. Second, the policy limit is divided by the result of the first step. Lastly, the result of the second step is multiplied by the amount of the business loss. Mt. Hawley will pay the result of the last step or the policy limit, whichever is less.

To clarify any confusion, the contract (thankfully) provides two examples which calculate the amount Mt. Hawley would pay assuming certain values for the net income, coinsurance percentage, policy limit, and amount of business loss. Both examples calculate the coinsurance penalty using net income that "would have been" received but for the accident.

B. *The Policy is Unambiguous*

Despite APS's assertions, the coinsurance provision is unambiguous—it calls for using projected income. APS argues that the policy is ambiguous because the three-step calculation only refers to "[n]et [i]ncome," but the examples refer to net income "that would have been" received. Such internal conflict makes the contract "ambiguous as a matter of law." And because insurance contracts are strictly construed against the insurer, its interpretation must govern—i.e. net income means actual net income for purposes of calculating the coinsurance penalty—so long as it is reasonable. According to APS, its interpretation is reasonable because it is based on the coinsurance penalty's plain text and still results in a modest penalty.

Although APS has a point—the language used in calculating the coinsurance penalty is imprecise—it does not render the contract ambiguous. To be ambiguous, the language must be susceptible to two reasonable interpretations. *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003). This language is not. When read as a whole and in light of the purposes

5

of insurance and coinsurance, no reasonable insurer or purchaser *ex ante* would have thought that net income meant actual net income.

When read as a whole, the contract is clear: the coinsurance penalty is calculated using projected net income. The contract refers to projected net income four times: in the definition of business income; in the definition of business income loss; in the determination of whether a coinsurance penalty applies; and lastly, in the examples. When the coinsurance provision refers to actual net income, it does so unmistakably—and it happens only once: the amount of business income loss includes "[t]he [n]et [i]ncome of the business *before the direct physical loss or damage occurred.*" At all other times, the policy refers to projected income. Thus, a reasonable person would assume that when the policy refers to net income without any subsequent language, it refers to projected net income. Even if one doubted that reading, the examples following the supposedly ambiguous language remove any lingering uncertainty.

An examination of the consequences of APS's preferred reading confirms that net income can only mean projected net income. To see why, consider the first required calculation—to determine whether there is a penalty at all. Under APS's reading, it is possible that a penalty applies, but the amount of the penalty is zero.[5] APS's reading, therefore, eliminates the need to

---

[5] To see why consider the following hypothetical: Assume that an insured purchases $500,000 of business income insurance with a coinsurance percentage of 90%, its projected net income is $1,000,000, and that the insured suffers a loss six months after Mt. Hawley issues the policy (i.e. the amount of the loss is $500,000). Here, there should be a coinsurance penalty because the policy limit ($500,000) is less than 90% of projected net income ($1,000,000 x .9 = $900,000). But the amount of the penalty is zero:

Step 1: $500,000 (actual net income) x .9 (coinsurance percentage) = $450,000
Step 2: $500,000 (policy limit) / $450,000 (result of step 1) = 1.11
Step 3: $500,000 (amount of loss) x 1.11 (result of step 2) = $555,000

No. 14-30068

determine whether a coinsurance penalty applies before calculating the amount of the penalty. Because "[o]ne provision of the contract should not be construed separately at the expense of disregarding other provisions," *Sims*, 956 So.2d at 589, APS's reading is unreasonable.

APS's reading would also lead to the coinsurance penalty being applied arbitrarily depending on when the loss occurred. If the loss occurred six months after Mt. Hawley issued the policy, APS would incur no penalty; but if the loss occurred ten months after, APS would incur a 33.3% penalty.[6] No reasonable buyer or insurer would want such a result. For buyers, this result contravenes the purpose of insurance. Consumers buy insurance to provide stability by reducing financial uncertainty. APS's reading doesn't do that. A buyer of this insurance has no idea how much of its loss Mt. Hawley would cover. And a completely random event—when the loss occurs—is the decisive factor. Insurers would not want this interpretation either. The same unpredictability illustrated above makes it harder to price the insurance policy. And such a random application of the coinsurance penalty makes it completely ineffective. Coinsurance clauses incentivize the insured to purchase an adequate level of coverage. *See* 15 La. Civ. L. Treatise, Insurance

---

Because Mt. Hawley will pay the policy limit or the result of step 3, whichever is less, there is no penalty—Mt. Hawley will pay $500,000. Therefore, the insured would incur no penalty and recover the full amount of its loss.

[6] Compare *supra* note 5 with the following example: assume the policy limit is $500,000 with a 90% coinsurance percentage, and $1,000,000 of projected net income (same as before). As shown in the previous footnote, if the insured suffers a loss six months after buying the policy, Mt. Hawley would pay $500,000. *See supra* note 5. If, however, the loss occurred ten months after buying the policy, there would be a 33.3% penalty:

Step 1: $833,333 (ten months' actual income) x .9 (coinsurance percentage) = $750,000
Step 2: $500,000 (policy limit) / $750,000 (result of step 1) = .667
Step 3: $166,667 (amount of loss) x .667 (result of step 2) = $111,166.89

Therefore, Mt. Hawley will pay $111,166.89; ASP will be liable for the rest, or $55,500.11.

No. 14-30068

Law & Practice § 10:31 (4th ed.) (describing coinsurance as "an effort by insurers to compel an insured to purchase sufficient coverage . . . ."). If the application and amount of the penalty is dictated by the timing of the loss, coinsurance will be ineffective at inducing the insured to purchase adequate coverage.[7]

To reiterate: the policy is unambiguous. When read as a whole and considering the contract's purposes, it is apparent that the net income described in calculating the coinsurance penalty is not actual net income, but projected net income. As the Louisiana Supreme Court has said "[t]he rules of contractual interpretation simply do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists." *Sims*, 956 So.2d at 589. APS's reading would do exactly that.

## CONCLUSION

For the reasons stated above, this Court concludes that the policy is unambiguous and requires using projected net income to calculate the coinsurance penalty. Accordingly, the district court's grant of summary judgment is **REVERSED** and **REMANDED**.

---

[7] Under the hypothetical used throughout this opinion, the insured suffers no penalty until the end of the seventh month of coverage. Accordingly, the odds of him incurring a penalty at all are less than 50%. Under these circumstances, a savvy consumer may risk a less than 50% chance of incurring a penalty rather than buy the necessary amount of insurance.