# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30140

HOUSTON SPECIALTY INSURANCE COMPANY,

Plaintiff - Appellant

v.

MEADOWS WEST CONDO ASSOCIATION; MEADOWS APARTMENT
OWNERS ASSOCIATION, INCORPORATED,

Defendants - Appellees

United States Court of Appeals
Fifth Circuit

**FILED**

January 6, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Louisiana
USDC 6:13-CV-2150

Before STEWART, Chief Judge, and CLEMENT and ELROD, Circuit Judges.
PER CURIAM:*

This insurance coverage dispute arises from property damage at the Meadows West Condominiums in Lafayette, Louisiana, in December 2012. Plaintiff-Appellant Houston Specialty Insurance Company ("HSIC") appeals the district court's grant of summary judgment in favor of Meadows West Condo Association and Meadows Apartment Owners Associated, Inc.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30140

(collectively, "Meadows West"). We AFFIRM in part and REVERSE and REMAND in part.

I.

In 2012, HSIC insured the Meadows West Condominiums in Lafayette, Louisiana (the "Property"), under a commercial property insurance policy (the "Policy"). The Property is an eighteen-building, 124-unit condominium. On December 26, 2012, the Property was damaged by a fire that originated in the HVAC duct work of one of the units. The fire damaged two units located in a single building. The remaining buildings on the Property were undamaged.

The Lafayette Fire Department investigated the fire on January 7, 2013, and determined that the layout of the duct work, the construction of the flex duct, and maintenance and housekeeping issues could have contributed to the fire. The Fire Department Investigator, Alton Trahan, provided these findings to Fire Prevention Chief Forrest Chaisson on January 17, 2013. Chaisson contacted the Chief Building Official, Larry Manuel, and advised him that the Property presented a serious fire hazard that needed to be addressed.

Manuel informed the Meadows West property manager, Marion Nevils, that the flex duct work in the Property's buildings was likely contributing to the fires and requested that Nevils hire a mechanical engineer to design a repair and a licensed commercial contractor to perform it. Manuel further told Nevils that he was obligated to see that the Property's potential fire hazards had been repaired and indicated that Section 116 of the International Building Code (the "Ordinance") authorized him to resolve the problem.[1] Manuel thus set a repair deadline of September 30, 2013, and informed Nevils that the power would be turned off to all units that remained unrepaired at that time.

---

[1] The Ordinance was adopted by the Lafayette Consolidated Government in September 2011 pursuant to Ordinance O-232-2811.

No. 15-30140

Pursuant to Manuel's request, Meadows West replaced the Property's flex duct work and then sought coverage under its Policy with HSIC. Under certain conditions, the Policy provided coverage for losses to undamaged portions of the Property resulting from the enforcement of an ordinance or law (the "Ordinance or Law Provision"). Meadows West asserted that the Ordinance or Law Provision covered its losses. Though HSIC paid the claim for the building that sustained fire damage, it refused to cover the flex duct work in the seventeen undamaged buildings. HSIC then sought a declaratory judgment that the Policy did not cover Meadows West's losses in reconfiguring the flex duct work. Meadows West counterclaimed for a money judgment covering the replacement costs and for statutory penalties.

HSIC moved for summary judgment and asserted three independent grounds to deny coverage: (1) the Ordinance or Law Provision did not cover the undamaged buildings; (2) even if the Ordinance was in effect at the time of the fire, Meadows West failed to comply with the Ordinance; and (3) the Policy's "faulty, inadequate or defective" exclusion (the "Exclusion") applied. Meadows West filed a cross-motion for summary judgment, contending that its costs were covered under the Policy.

The district court denied HSIC's motion for summary judgment and granted Meadows West's motion, finding that the Ordinance or Law Provision covered Meadows West's losses and that HSIC failed to prove that the Exclusion applied.[2]  HSIC now appeals.

## II.

This court reviews a district court's grant of summary judgment de novo, applying the same standard as did the district court. *Ferraro v. Liberty Mut.*

---

[2] HSIC also moved for summary judgment on Meadows West's claim for statutory penalties, which the district court granted. Meadows West does not appeal this judgment.

No. 15-30140

*Fire Ins. Co.*, 796 F.3d 529, 531 (5th Cir. 2015).   Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "On cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party."  *Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 691 (5th Cir. 2010) (internal quotation marks and citation omitted).

"We review a district court's interpretation of an insurance contract de novo because it is a matter of law."  *Kinsale Ins. Co. v. Georgia-Pacific, L.L.C.*, 795 F.3d 452, 454 (5th Cir. 2015).  Because this case "is a diversity action regarding the interpretation of [an] insurance polic[y] issued in Louisiana, Louisiana's substantive law controls."  *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007).

## III.

HSIC contends that the district court erred in finding that the Ordinance or Law Provision covered Meadows West's losses and that the Exclusion did not apply.  We address each argument in turn.[3]

## A.

We first address whether Meadows West's losses were covered under the Policy's Ordinance or Law Provision.   The Ordinance or Law Provision provides: "If a Covered Cause of Loss occurs to Covered Property, [HSIC] will

---

[3] As an initial matter, HSIC contends that the district court failed to rule on its objections to Meadows West's evidence and thus committed reversible error in granting summary judgment on coverage.  We disagree with this characterization.  The district court "first consider[ed] HSIC's motion to strike" and explicitly stated that it had "reviewed" the challenged affidavit and would consider only those portions that complied with the Federal Rules.  This was proper.  *See Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 531 (5th Cir. 1992) ("On a motion for summary judgment, the district court should disregard only those portions of an affidavit that are inadequate and consider the rest.").

No. 15-30140

pay for: (1) **The loss to the undamaged portion of a covered building** caused by the enforcement of any ordinance or law that: (a) Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss; (b) Regulates the construction or repair of buildings . . .; and (c) Is in force at the time of loss." Under Louisiana law, the burden is on Meadows West to prove coverage under the Policy. *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 358–59 & n.31 (5th Cir. 2010) (citing *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 123–24 (La. 2000)). Meadows West has met this burden.

1.

HSIC first contends that the phrase "undamaged portion" means that the Ordinance or Law Provision applies only to buildings that were damaged in the fire. This argument conflicts with the Policy's plain language. "When a contract's language is 'clear and explicit and lead[s] to no absurd consequences, no further interpretation may be made in search of the parties' intent.'" *Guidry*, 512 F.3d at 181 (quoting La. Civ. Code Ann. art. 2046). "If the wording of the policy is unambiguous, then the contract must be enforced as written." *Id.* (internal quotations omitted). The Policy defines "Building(s)" as "the buildings or other structures at the Insured Location." Thus, pursuant to the Policy's definitions, even the singular term "building" refers to all of the buildings at the Property. Applying the Policy definitions and terms as written, even if only one building is damaged by a "Covered Cause of Loss," the Ordinance or Law Provision covers all of the buildings at the Covered Property. *See Dawson Farms, L.L.C. v. Millers Mut. Fire Ins. Co.*, 794 So. 2d 949, 952 (La. Ct. App. 2001) ("The test for construing an insurance policy is not what the insur**er** intended the words to mean, but, how the words would have been understood by a reasonable person in the shoes of the insur**ed**."). Accordingly, damage to just one building is sufficient to trigger coverage as to all buildings.

5

No. 15-30140

2.

HSIC next argues that the Ordinance or Law Provision does not apply because the Ordinance provided no minimum repair requirements and did not require demolition or regulate repair.

a.

First, Section 2.f.(3) of the Policy provides that HSIC will pay for "[t]he increased cost to repair, rebuild, or construct the Covered Property . . . [l]imited to the minimum requirements of such ordinance or law regulating the repair or reconstruction of the damaged property." HSIC argues that the inclusion of this Policy language shows that there must be an ordinance in effect that contains minimum requirements regulating the repair or construction of the Property. Though "one policy provision is not to be construed separately at the expense of disregarding other policy provisions," *Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 675, 683 (5th Cir. 2011), we are mindful that "an insurance contract should not be construed in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by its unambiguous terms or to achieve an absurd conclusion," *Smith v. Am. Family Life Assurance Co. of Columbus*, 584 F.3d 212, 216 (5th Cir. 2009).

Here, the Ordinance or Law Provision provides coverage for three distinct types of claims. First, under Section 2.f.(1), HSIC will pay for "[t]he loss to the undamaged portion of a covered building caused by the enforcement" of certain ordinances. Second, Section 2.f.(2) provides that HSIC will pay for "[t]he cost to demolish and clear the site of undamaged parts of the covered building" caused by the enforcement of certain ordinances. Finally, Section 2.f.(3) covers "[t]he increased cost to repair, rebuild or construct the Covered Property." The types of claims at issue under 2.f.(1) and 2.f.(3) are completely

6

different.    While 2.f.(1) covers only the undamaged portions of covered buildings, 2.f.(3) refers to the cost of rebuilding, repairing, or constructing the entire property.

Further, Section 2.f.(1) contains its own separate limitation on HSIC's liability that leads us to conclude that Sections 2.f.(1) and 2.f.(3) are not to be read in conjunction.  Section 2.f.(1) specifically provides that "[t]he most [HSIC] will pay . . . under this portion of Ordinance or Law is the Limit of Insurance . . . shown in the Declaration Certificate."  In contrast, only Section 2.f.(3) defines HSIC's liability limits in terms of the "minimum requirements" of certain ordinances.  Thus, the "minimum requirements" language of Section 2.f.(3) does not extend to Section 2.f.(1).  Accordingly, we conclude that an ordinance need not contain minimum repair requirements to trigger the application of the Ordinance or Law Provision.

b.

HSIC next asserts that the Ordinance does not require demolition or regulate repair as required by the Policy but merely gives discretion to the building officials.  Section 116.1 of the Ordinance provides that "[u]nsafe structures shall be taken down and removed or made safe, as the *building official* deems necessary."  This language mandates the removal *or* repair of unsafe structures.  HSIC, however, points out that, though there were five previous fires at the Property, the building official did not mandate a re-design of the flex duct work until the December 2012 fire.  This does not change our conclusion.  The Lafayette Consolidated Government (the "City") did not adopt the Ordinance until 2011, and the five previous fires all occurred between 1997 and 2010.  Even if the building official's prior lack of action was sufficient to preclude coverage under Section 2.f.(1), the Ordinance was not in effect at the time of the earlier fires.

No. 15-30140

HSIC also asserts that the correspondence between City officials and Meadows West's management shows that the Ordinance did not "require demolition" or "regulate repair." We disagree. In his January 18, 2013, letter (the "January 18 Letter") to Nevils, Manuel threatened to resort to legal action. Further, though the January 18 Letter does not specifically cite any ordinance or law, Manuel again corresponded with Nevils on April 12, 2013 (the "April 12 Letter"). In the April 12 Letter, Manuel explicitly stated that he was authorized by law to take necessary steps to "resolve this problem [of potential fire hazards] under [Section 116], which has been adopted by the Lafayette Consolidated Government." Manuel issued a repair deadline of September 30, 2013, and informed Nevils that he would disrupt the power to all of the unrepaired units if the repairs referenced in the January 18 Letter were not completed. Taken together, the January 18 Letter and the April 12 Letter indicate that Manuel "deemed [the Property] an unsafe condition" and "specifie[d] the required repairs or improvements to be made to abate the unsafe condition . . . within a stipulated time" as required by the Ordinance.

Finally, Meadows West was required by City officials to reconfigure the flex duct work. Manuel identified the flex duct work as a fire hazard and instructed that it be removed and repaired. Following this determination, Manuel: (1) requested that Meadows West hire a Louisiana licensed contractor; (2) instructed Meadows West to have the repair drawn and designed by a mechanical engineer; and (3) suggested acceptable repairs. While Manuel did not mandate a specific type of repair aside from the removal of the flex duct work, the repair plans still had to be approved by the Planning, Zoning, and Codes Department, and the repair itself was subject to inspection by the fire marshal. Thus, Meadows West was required, by law and through the application of the Ordinance, to remove and replace the flex duct work, triggering the Ordinance or Law Provision.

8

No. 15-30140

3.

HSIC also asserts that Meadows West failed to comply with the Ordinance prior to the fire.  Section 2.f.(4)(b) of the Policy provides that "[o]rdinance or [l]aw [c]overages do not apply to . . . [a]ny loss due to the Insured's failure to comply with any ordinance or law that the Insured was required to comply with before the loss, even if the Covered Property was undamaged."  HSIC contends that the Ordinance would have required Meadows West to remedy an unsafe condition after the 2010 fire.  We again disagree.

There is no evidence that Meadows West failed to comply with the Ordinance prior to the fire.  First, the City's officials did not identify the flex duct work as an unsafe condition and mandate its removal until the January 18 Letter and the April 12 Letter.  Meadows West was not informed that the flex duct work presented an unsafe condition until after the 2012 fire and thus could not have failed to comply.  Most importantly, the Ordinance was not adopted until late 2011—well after City officials advised Meadows West of its findings from the 2010 fire.  Because the Ordinance was not yet in effect at the time of the 2010 fire, Meadows West could not have failed to comply with it.

Accordingly, Meadows West has met its burden of proving that the Policy's Ordinance or Law Provision applied to its loss.  *See Bayle*, 615 F.3d at 358–59 & n.31.

B.

Because we conclude that Meadows West's losses were covered by the Ordinance or Law Provision, we now turn to the applicability of the Policy's Exclusion.  The Exclusion here provides, in relevant part: "The Company will not pay for loss or damage caused by or resulting from any of the following: . . . Faulty, inadequate or defective: . . (2) Design, specifications, workmanship,

9

repair, construction, renovation, remodeling, grading, compaction; . . . [or] (4) Maintenance; of part or all of any property on or off an insured premises."

"The insurer has the burden of proving that a policy claimed loss falls within [an] exclusion." *Looney Ricks Kiss Architects, Inc. v. State Farm Fire & Cas. Co.*, 677 F.3d 250, 256 (5th Cir. 2012) (alteration in original) (internal quotation marks and citation omitted). "Ambiguous or equivocal provisions which seek to narrow the insurer's obligations are construed against the insurer." *Id.* at 255–56 (internal quotation marks and citation omitted).

HSIC argues that the Property was defectively designed, constructed, or maintained. Specifically, HSIC points to the correspondence between the City officials following the 2012 fire to show that the Property's flex duct work was faulty in its design, maintenance, or construction at the time of loss. For example, Trahan observed that the 2012 fire started in the same area as the previous fires, that the flex duct work sagged over time and allowed the accumulation of combustible particles, and that the layout of the flex duct work and maintenance could have contributed to the fire. When discussing the Property fires with Manuel, Chaisson referred to the Property as an "unsafe condition." Further, in his correspondence with Nevils, Manuel stated that the flex duct work was "causing excessive heat which ignites the dust that has been collected over the years."

These statements could establish that some type of problem in the flex duct work—either maintenance, construction, or design—caused fires at the Property. In fact, City officials recommended that a new design of the flex duct work would alleviate the potential fire hazard. HSIC also presented evidence that the "area of origin of [the 2012 fire was] identical to the five previous fires." Admittedly, the City's officials were noncommittal in pinpointing the exact causes of the 2012 fire. And further, neither Chaisson nor Trahan—who actually performed inspections of the Property—described the flex duct work

No. 15-30140

as defective. Their observations, however, could allow a reasonable fact-finder to conclude that a defect existed in the Property and the Exclusion thus applied.

Because HSIC raised a genuine issue of material fact regarding the application of the Exclusion, the district court erred in granting summary judgment in favor of Meadows West.

### IV.

In sum, we agree with the district court that Meadows West established that its losses were covered under the Ordinance or Law Provision. We conclude, however, that genuine issues of material fact preclude summary judgment on the applicability of the Exclusion.

Accordingly, the judgment of the district court is AFFIRMED in part, and REVERSED and REMANDED in part for further proceedings consistent with this opinion.