# United States Court of Appeals for the Fifth Circuit

———————

No. 23-30357

———————

United States Court of Appeals
Fifth Circuit

**FILED**

July 25, 2024

Lyle W. Cayce
Clerk

Keiland Construction, L.L.C.,

*Plaintiff—Appellant/Cross-Appellee*,

*versus*

Weeks Marine, Incorporated,

*Defendant—Appellee/Cross-Appellant*.

———————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:20-CV-827

———————————————————————

Before Willett, Wilson, and Ramirez, *Circuit Judges*.

Cory T. Wilson, *Circuit Judge*:

Keiland Construction sued Weeks Marine Inc. for breach of a construction contract. The district court held a bench trial and concluded that the contract was ambiguous, construed it against Keiland as the drafter, and determined Weeks prevailed. After cross-motions for summary judgment on damages, the court awarded Keiland damages, but in accord with Weeks's interpretation of the contract. The court also awarded Weeks attorneys' fees and costs, though less than the amount Weeks requested, and denied Weeks's motion for post-offer-of-judgment attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 68(d).

No. 23-30357

The parties cross-appeal. Keiland contends the district court erred in holding the contract ambiguous, determining Weeks prevailed on the contract interpretation issue, and granting partial summary judgment for Weeks as to damages. Weeks contests the district court's attorneys' fees calculation, as well as the court's award of prejudgment interest to Keiland and denial of post-offer attorneys' fees. We affirm in all respects.

## I.

### A.

In December 2019, Weeks Marine, Inc., as general contractor, entered a construction subcontract (the Contract) with Keiland Construction for a project in Cameron Parish, Louisiana. Weeks's vice-president David Hafner and Keiland's president Keith DuRousseau signed the Contract for their respective companies.

In March 2020, Weeks terminated the Contract "for convenience," invoking Section 9 of the Contract. Traveling under Section 5, Keiland submitted to Weeks three pay applications, one just prior to termination and two afterwards, totaling more than $570,000. Keiland also submitted a request for $25,210.35 in demobilization costs. The parties disputed the total compensation due.

The parties' dispute centered on the interplay between Sections 5 and 9 of the Contract. Section 5, "COMPENSATION," outlines how Weeks was to pay Keiland for the work to be performed:

> COMPENSATION: As full consideration for the satisfactory performance by [Keiland] of this subcontract, [Weeks] shall pay to [Keiland] compensation in accordance with the prices set forth below.

2

No. 23-30357

| Table 1 | | | | | |
|---|---|---|---|---|---|
| Item # | Description | Quantity | UM | Unit Price | Extended Price |
| 1 | NW Gate Concrete Work | 1 | LS | $348,000.00 | $348,000.00 |
| 2 | North East Gate Concrete Work | 1 | LS | $318,375.00 | $318,375.00 |
| 3 | SE Emergency Gate Concrete Work | 1 | LS | $14,225.00 | $14,225.00 |
| 4 | Access Doors Concrete Work | 6 | EA | $2,900.00 | $17,400.00 |
| 5 | Site Access/Safety Requirements | 1 | LS | $15,912. | $15,912.00 |
| | | | | Total: | $713,912.00 |

> All pricing is firm for the duration of the project. All unit priced quantities listed above are estimated quantities only. Payment will be made in accordance with actual quantities performed by [Keiland] and approved by [Weeks]. Unit pricing shall remain the same irrespective of final quantities performed.
>
> [Keiland] shall provide monthly invoices for work completed and payment shall be made within fourteen (14) days of [Weeks's] receipt of payment from the OWNER . . . .

The "LS" moniker in Table 1 means "Lump Sum"; the charged work was to be compensated by the indicated lump sum amount.

Section 9, "TERMINATION FOR CONVENIENCE," allowed Weeks, "at its option, [to] terminate for convenience any of the Work under this subcontract in whole or in part at any time." Section 9 also delineated post-termination compensation:

> [Keiland] shall be entitled to the actual and necessary expense of finishing its Work through the date of termination, the actual and necessary expenses of withdrawing from the Project site, and twenty-one percent (21%) for overhead and profit associated with its Work through the date of termination . . . .

In Keiland's reading, Section 5 entitled Keiland to payment on a lump-sum basis for work completed at the time of termination, and Section 9 provided for cost-plus compensation for all work performed thereafter. Weeks countered that upon termination, Section 9 converted the Contract's lump-

3

No. 23-30357

sum payment structure to a cost-plus basis for both pre- and post-termination work.

In January 2021, Weeks paid Keiland $200,000 "in the spirit of good faith after being unable to calculate Keiland['s] actual costs." Weeks asserts that this payment was intended to cover all of Keiland's costs, including Keiland's claimed demobilization costs, but Keiland contests what costs were included. Weeks also made direct payments to some of Keiland's vendors.

**B.**

Meanwhile, Keiland filed suit in Louisiana state court in May 2020, alleging that Weeks breached the Contract, defamed Keiland, and violated the Louisiana Unfair Trade Practices and Consumer Protection Law.[1] Weeks removed the action to federal court in June 2020. The parties filed competing motions for summary judgment in May and June 2021. They "agree[d] that Section 5 creates a lump sum contract, but disagree[d] as to when Section 9 might allow termination to convert that contract to a cost-plus compensation structure."

The district court denied the parties' cross-motions for summary judgment, concluding that Section 9's compensation terms were ambiguous. It found the phrase "[Keiland] shall be entitled to the actual and necessary expense of finishing its Work through the date of termination" supported Keiland's interpretation that it was entitled to lump-sum payment for all work completed through termination. But the court noted that the allowance of 21% for overhead and profit associated with "Work through the date of termination" supported both parties' interpretations. The court found

---

[1] Keiland moved to dismiss its Louisiana Unfair Trade Practices Act and defamation claims, which the court granted.

4

Weeks's proffered parol evidence to be "self-serving and vague," and in any event, "[t]he language of the [C]ontract remain[ed] too ambiguous to be clarified by this evidence."

Keiland requested a trial setting and bifurcation of the issues of contract interpretation and resulting damages.  Weeks opposed bifurcation of the issues as premature.  After a status conference with the parties, the court granted Keiland's motion in September 2021.  On July 1, 2022, prior to the trial setting, Weeks offered a $100,000 judgment, "inclusive of all costs, fees, and interest," under Federal Rule of Civil Procedure 68.  Keiland did not accept.

In November 2022, the district court conducted a bench trial on the Contract's interpretation.  Considering the parties' evidence, the court found that "there was no meeting of the minds with respect to [the Contract's] interpretation."  The court construed the Contract against Keiland, which had drafted the relevant language, and held that the entire Contract converted to a "cost-plus" arrangement after termination. Tracking Contract Section 9, the court determined Weeks owed Keiland only for the "work completed through the effective date of termination [plus 21% for overhead and profit,] and [Keiland was] not entitled to payment on the lump-sum basis for any work completed under the subcontract."

After trial, both parties moved for summary judgment on damages. Applying Louisiana law, the district court held that Keiland only needed to submit the "best evidence available" to support its costs, after which the burden shifted to Weeks to rebut that evidence.  Considering Keiland's evidence, as well as an affidavit submitted by Hafner on Weeks's behalf, the court made the following determinations:  (1) Keiland was not entitled to payment for services of Keiland employees on the project (i.e., direct employee costs) because that expense was subsumed within the 21% markup

for overhead; (2) Keiland was not entitled to a 21% markup on post-termination work, and it failed to show that Weeks owed demobilization costs for direct employee labor; (3) Weeks was the prevailing party at trial and was accordingly entitled to attorneys' fees "associated with the bench trial," under Section 21 of the Contract; and (4) neither party was entitled to attorneys' fees on the damages issue because neither prevailed on that issue.[2] The court later amended its judgment to award Keiland prejudgment interest of $20,300.34, pursuant to Louisiana law.

## C.

As the prevailing party at trial, Weeks sought to recover attorneys' fees totaling $207,583.75, and $13,729.05 in costs, pursuant to the Contract. Weeks also moved under Federal Rule of Civil Procedure 68(d) for attorneys' fees and costs accrued after its offer of judgment, contending that Weeks's unaccepted offer of judgment for $100,000 was more favorable than the court's final award to Keiland.

The district court, in accord with its earlier opinion, awarded Weeks attorneys' fees. But the court found that Weeks's proffered evidence "fail[ed] to distinguish between the fees and costs incurred for the one-half day bench trial and other fees and costs." To remedy Weeks's

---

[2] The court's final calculations were as follows:

Weeks is entitled to reimbursement for demobilization costs plus markup on those costs paid to Keiland but obligated to pay (1) $22,278.60 for markup on equipment and materials costs for those vendors paid directly by Weeks; (2) $8,946.23 for outstanding materials costs plus markup; and (3) $221,001.17 plus markup of $46,410.25 for labor costs of [a vendor]. These amounts should be adjusted against Weeks's $200,000 payment to Keiland as well as any other prior payments.

Finally, Weeks is entitled to costs [and] attorney fees associated with the bench trial of November 7, 2022 . . . .

"overinclusive" evidence, the court awarded Weeks what the court computed as 20% of Weeks's "reduced liability exposure," which totaled $77,316.70, as attorneys' fees.[3] The court also awarded $342.17 for Weeks's costs associated with the trial, ruling that the other costs Weeks sought were not allowed under 28 U.S.C. § 1920.

Finally, the court concluded that after adjusting for the $200,000 Weeks already paid and adding prejudgment interest, Weeks owed Keiland $118,936.59, which was greater than Weeks's $100,000 offer of judgment. Therefore, the court determined its judgment was more favorable than Weeks's unaccepted offer and denied Weeks's Rule 68(d) motion for post-offer attorneys' fees and costs.

## II.

The parties cross-appeal. Keiland asserts that the district court erred by (A) concluding the Contract was ambiguous and then construing it against Keiland; (B) considering Hafner's summary judgment affidavit and denying Keiland its direct employee and demobilization costs; and (C) determining that Weeks was the prevailing party on the contract interpretation issue. Weeks contends that (D) the court abused its discretion by not awarding Weeks attorneys' fees and costs pre-bifurcation and that the court's calculations were unreasonable. Weeks also challenges (E) the district court's award of prejudgment interest to Keiland and its denial of attorneys' fees and costs.

## A.

We begin with Keiland's contention that the district court erred in (1) determining the Contract to be ambiguous and (2) construing it against

---

[3] The district court's calculation of fees will be further detailed *infra* PART II.D.

Keiland after determining that there was no meeting of the minds between the parties when the agreement was formed. The court did not err.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed *de novo*." *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 364 (5th Cir. 2009) (per curiam) (emphasis added). "[W]e review matters of contract interpretation *de novo*." *Habets v. Waste Mgmt., Inc.*, 363 F.3d 378, 382 (5th Cir. 2004). "When reviewing a district court's factual findings, this court may not second-guess the district court's resolution of conflicting testimony or its choice of which experts to believe." *Grilletta*, 558 F.3d at 365.

As this is a diversity case from Louisiana, we apply the substantive law of that state. *See Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 294 (5th Cir. 2009). Interpreting a contract under Louisiana law "is the determination of the common intent of the parties." LA. CIV. CODE ANN. art. 2045. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Id.* art. 2050 (2024). "[W]hen a contract is ambiguous, the trier of fact must resolve the factual issue of intent . . . ." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007). "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, [and] the conduct of the parties before and after the formation of the contract . . . ." *Greenwood 950, L.L.C. v. Chesapeake La., L.P.*, 683 F.3d 666, 669 (5th Cir. 2012) (internal quotations omitted). "If the contract remains ambiguous, and if there are two or more reasonable interpretations, the contract is construed against its drafter." *Id.*

**1.**

Whether the Contract is ambiguous turns on the interplay between the text of Sections 5 and 9 of the Contract. Keiland asserts that Section 5

unambiguously "contemplated lump-sum compensation for any and all pre-termination work," and Section 9 only "provides additional compensation terms for any post-termination work." Weeks counters that Section 9's text converted the Contract's lump-sum payment structure to a cost-plus basis for both pre- and post-termination work, such that after termination, Section 5 no longer controls compensation terms. Weeks's proffered interpretation notwithstanding, Weeks effectively concedes that the Contract is ambiguous because it accepts that both parties advance reasonable interpretations.

We agree with the district court that the relationship between Sections 5 and 9 of the Contract is ambiguous because we cannot "determin[e] . . . the common intent of the parties." LA. CIV. CODE ANN. art. 2045. The Contract's text is susceptible to "two . . . reasonable interpretations." *See Greenwood 950*, 683 F.3d at 669. Keiland's reading, that the sections required compensation for pre-termination work on a lump-sum basis and post-termination work on a cost-plus basis, is plausible. But so is Weeks's, namely that Section 9 operated to convert all compensation due Keiland to cost-plus upon termination—particularly given that Section 9 specifies payment for 21% of costs "for overhead and profit associated with Work *through the date of termination*."

Keiland's argument that Section 9 is unambiguous is unpersuasive. For instance, Keiland contends that Weeks's reading renders Section 5 meaningless. Not so. As Weeks advances, it is also plausible that Section 5 controlled compensation under the Contract *until* Weeks terminated the Contract, after which Section 9 became the salient provision. Under this reading, post-termination, Section 9 governed compensation under the Contract, and Section 5 no longer delineated the parties' relationship, as the Contract had ended.

Keiland attempts to bolster its position by stating that it assumed risk in agreeing to pricing (under Section 5) that was "firm for the duration of the Project." Keiland reasons that this evidences the parties' intent to create a lump-sum compensation structure for pre-termination work. But this misses the mark: Whether Keiland assumed risk by signing a lump-sum contract, or whether Weeks knew Keiland's reasoning, is beside the point. Neither contention defeats—or is even inconsistent with—Weeks's proffered interpretation that compensation shifted from lump-sum to cost-plus after termination. Under Weeks's interpretation, Keiland would be entitled to a 21% markup for "overhead and profit" in the eventuality of termination. While Keiland may have assumed risk under Section 5 that its costs would be greater than its lump-sum compensation "for the duration of the Project," Section 9 protected Keiland in case of termination for convenience—which is precisely what happened.

All considered, while Keiland's interpretation of the Contract is reasonable, Weeks's interpretation is equally plausible—if not more so—under the text of the Contract. Faced with the impasse between the parties' competing, and reasonable, interpretations, the district court correctly held the Contract to be ambiguous.

**2.**

Given the Contract's ambiguity, the district court, as trier of fact during the bench trial, had to "resolve the factual issue of intent," *Guidry*, 512 F.3d at 181. The court concluded, as to the interpretation of Sections 5 and 9, there was no mutual intent of the parties when they signed the Contract. So the district court construed the Contract against Keiland, as drafter of the disputed language.

Keiland does not contest that it drafted the disputed language, or that under Louisiana law the disputed language must be construed against the

drafter.  Instead, Keiland attacks the district court's finding that the parties lacked mutual intent.  Reprising its reading of the Contract, Keiland contends the parties' intent was clear:  They contemplated that work completed under Section 5 would be compensated on a lump sum basis, and, if Weeks terminated the Contract, then Section 9 required post-termination work to be compensated cost-plus.  Weeks responds that the district court correctly concluded that there was no meeting of the minds, and thus no mutual intent.

Keiland fails to show clear error in the district court's finding that the parties lacked mutual intent.  *See Grilleta*, 558 F.3d at 364 (outlining that "findings of fact [at a bench trial] are reviewed for clear error").  Testimony from trial indicates the parties held differing views as to Section 5 and 9's interpretation.  DuRousseau testified that he and Keiland's attorney altered Section 9's language to convert the Contract to cost-plus compensation for work completed after termination.  But Hafner, on Weeks's behalf, testified that he interpreted DuRousseau's changes to Section 9 to convert all compensation from lump-sum to cost-plus post-termination.  This testimony, coupled with post-termination email exchanges in which the parties adhered to these interpretations, supports the district court's conclusion that the parties did not have the same intent regarding these provisions.  *Cf. Greenwood 950*, 683 F.3d at 669 (instructing that in interpreting contracts a court may look to "the conduct of the parties . . . after the formation of the contract").

Given the Contract's ambiguous text, and the record that supports the district court's finding that the parties had no meeting of the minds as to the proper interpretation of the Contract, the district court properly applied Louisiana law and construed the disputed language against the drafter—here, Keiland.  It follows that the district court correctly held that "Keiland's compensation terms switched to the 21 percent cost-plus basis for all work

completed through the effective date of termination and it is not entitled to payment on the lump-sum basis for any work[.]"

## B.

Keiland contends the district court made several errors in entering its summary judgment awarding damages, namely by:   (1) considering the affidavit Weeks's vice-president Hafner provided to counter Keiland's payment calculations, (2) holding Keiland was not entitled to its direct employee costs, and (3) determining that Keiland was not entitled to demobilization costs.

"We review grants of summary judgment *de novo*, applying the same standard as the district court." *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "All reasonable inferences must be viewed in the light most favorable to the party opposing summary judgment, and any doubt must be resolved in favor of the non-moving party." *In re La. Crawfish*, 852 F.3d at 462. Notwithstanding, "[i]f a movant alleges an absence of specific facts necessary for a nonmovant to establish an essential element of its case, then the nonmovant must respond by setting forth specific facts showing that there is a genuine [dispute] for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (citations and internal quotation marks omitted). Thereafter, "if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Id.* (citation omitted). This court "review[s] the district court's evidentiary rulings for abuse of discretion." *King v. Ill. Cent. R.R.*, 337 F.3d 550, 553 (5th Cir. 2003).

A federal court sitting in diversity must evaluate issues of state law by looking to the decisions of the state's highest court. *Meador v. Apple, Inc.*,

911 F.3d 260, 264 (5th Cir. 2018). If we lack case law from that court, we may look to decisions of the intermediate appellate courts, barring a reason to think the highest court would decide otherwise. *Id.* We may not "expand state law beyond its presently existing boundaries." *Barfield v. Madison Cnty., Miss.*, 212 F.3d 269, 272 (5th Cir. 2000).

### 1.

Keiland challenges the admission of Hafner's affidavit on several grounds but ultimately fails to show that the district court abused its discretion in considering the affidavit. *See King*, 337 F.3d at 553. First, Keiland contends that the affidavit is "unsworn" and therefore "incompetent" under 28 U.S.C. § 1746 and our precedent. But § 1746 "permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury' and verified as 'true and correct.'" *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005) (quoting *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988)). And the very first line of Hafner's affidavit states, "I, David P. Hafner . . . do swear and state the following under *penalty of perjury* that the following is *true and correct*." Hafner's affidavit thus clearly passes muster under § 1746.

Next, Keiland attacks the affidavit as contradictory to other testimony offered by Weeks. For example, Keiland contends that Hafner's affidavit avers that the $200,000 payment Weeks made to Keiland early in the parties' dispute was only for "actual costs," while Weeks's corporate testimony indicates that the payment included actual costs plus the contractual 21% markup. Similarly, Keiland contends that Hafner's affidavit states the 21% markup covered costs for Keiland's project manager, superintendent, and estimator, but that Weeks's prior testimony excludes "the project manager and superintendent" from the markup. And Keiland contends that Hafner

"wrongly state[s]" Weeks could not calculate Keiland's costs, asserting that it proffered adequate support for its costs and that Weeks merely "chose" not to calculate them. Weeks responds to all this that Hafner's affidavit clarifies, not contradicts, prior testimony and that such clarifications are permissible under Louisiana law.

The district court did not abuse its discretion in considering Hafner's affidavit. Summary judgment affidavits may "supplement" or "explain certain aspects of . . . deposition testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495–96 (5th Cir. 1996). Hafner's affidavit does this and does not contradict Weeks's prior testimony. For instance, Weeks stated in its certified discovery responses that it found Keiland's rates for its project manager and superintendent to be "excessive."[4] Moreover, Hafner testified that "the project manager, superintendent, and estimator are overhead people and shouldn't be included in the [actual] cost at all." And Hafner—at trial and in his affidavit—testified that he could not calculate the costs because of "discrepancies" in the claimed costs.[5] So he simply hypothesized an "hourly rate . . . that [he] believed could be justified."

Keiland fails to show how, in any of these particulars, Hafner's affidavit "impeaches," rather than "supplements" or "explains," the previous testimony. *S.W.S. Erectors, Inc.*, 72 F.3d at 495–96. Accordingly,

---

[4] Weeks argues that because the discovery responses were not admitted into evidence, this court should not consider Keiland's arguments regarding the purportedly contradictory evidence. We pretermit whether this evidence is properly before us because Keiland has failed to show that the district court erred in its decision to consider Hafner's affidavit regardless. *Cf. Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998) ("[W]e may affirm a judgment upon any basis supported by the record.").

[5] Keiland's position that it did not need to provide detailed costs is untenable given the district court's reading, which we share, that the Contract converted upon termination to a cost-plus compensation scheme.

No. 23-30357

Keiland fails to show any abuse of discretion in the district court's consideration of it. *See King*, 337 F.3d at 553.

**2.**

Under Louisiana law, contractors seeking to recover their labor costs under a cost-plus contract are subject to "strong scrutiny," and the party seeking costs must show "an agreement between the parties" to do so. *Foster v. Soule*, 310 So. 2d 170, 172 (La. Ct. App. 1st Cir. 1975); *see also Higgins v. Rini*, 597 So. 2d 1238, 1240 (La. Ct. App. 3d Cir. 1992). Contracting parties must delineate what will be covered in a party's claimed "costs" when those costs are a part of the "usual and ordinary concept of the supervisory type service rendered by a cost plus contractor." *Higgins*, 597 So. 2d at 1240. Applying these principles, the district court determined that Keiland had to substantiate that its labor costs for its estimator, project manager, and superintendent were separately recoverable beyond Section 9's allowance for "overhead and profit." The court found that Keiland failed to do so, and it declined to weigh Keiland's evidence, including DuRousseau's affidavit, on the issue of these direct employee costs.[6] Keiland contends that this was error because DuRousseau's affidavit, documentary evidence, and expert testimony adequately substantiated Keiland's entitlement to direct employee costs.[7]

---

[6] The court did not altogether ignore DuRousseau's affidavit, as Keiland contends. The court simply found that DuRousseau did not offer evidence of an agreement that Keiland could charge direct labor costs, as required under Louisiana law. The court considered DuRousseau's affidavit testimony as it pertained to other costs, e.g., for markups for equipment and materials and for a specific vendor's costs.

[7] For the first time in its reply brief, Keiland contends that the district court misapplied Louisiana law in requiring Keiland to show an agreement between the parties for Keiland to recover its direct employee costs. But issues raised for the first time in a reply brief are forfeited. *Hernandez v. United States*, 888 F.3d 219, 224 n.1 (5th Cir. 2018). Regardless, as discussed above the line, we agree that Louisiana requires an agreement

15

The thrust of Keiland's argument is that Keiland provided competent evidence proving that the parties agreed Keiland could charge for its own labor and outlining its direct employee costs. Keiland cites to its initial bid showing costs of its direct employees, "Job Detail Reports" recording the hours employees spent on the project, and a "rate sheet" showing hourly rates of project managers, superintendents, etc. But Keiland's argument fails at step one, because, as the district court properly determined, none of Keiland's evidence shows an agreement between it and Weeks that Keiland could charge for its labor costs.

Section 5 of the Contract, which Keiland concedes controls compensation pre-termination, plainly offers Keiland no support, as the Contract's lump sum payment structure forecloses the idea of Weeks's additionally paying Keiland's direct labor costs during performance of the Contract. But Keiland's contention finds no harbor in Section 9 either. That provision, which controls compensation in the event of termination, allows Keiland to recover "the actual and necessary expense of finishing its work through the date of termination . . . and twenty-one percent (21%) for overhead and profit" for such work. This phrasing makes no mention of Keiland's labor costs, and the Contract otherwise gives no hint that the parties intended Keiland's labor costs for its estimator, project manager, and superintendent to be separately recoverable as "actual and necessary expense[s] of finishing [Keiland's] work," rather than as part of the 21% markup "for overhead and profit." If anything, the inference from Section 9 is that Keiland's supervisory labor costs fall within "overhead and profit." At bottom, Keiland fails to support any intention to the contrary, despite the

_____

between contractors if one of them wishes to charge for its own labor. *See Higgins*, 597 So. 2d at 1240 ("[Louisiana] law is clear that for a contractor to charge for his own labor, there must be an agreement between the parties.").

evidence it proffered.  And absent such an agreement between the parties, Keiland's direct labor costs are not separately recoverable.  *See Higgins*, 597 So. 2d at 1240; *Foster*, 310 So. 2d at 172.

**3.**

Likewise, the district court did not err in ruling that Keiland was not entitled to additional demobilization costs and in offsetting Keiland's damages award against Weeks's earlier payment to Keiland.  In Keiland's view, Section 9 entitles it to $25,210.35 in extra demobilization costs, consisting of $10,635.00 in "labor costs for its direct employees," $10,200.00 in attorneys' fees, plus the 21% contractual markup.[8]  And because Weeks failed to request a "clawback" of funds previously paid for demobilization, Weeks cannot properly receive an offset now.  Weeks counters that Keiland failed to show entitlement to added costs; that even if Keiland was entitled to such costs, its evidence was "self-generated" and "conflicting"; and that Weeks properly requested reimbursement for the estimated demobilization costs included in its initial $200,000 payment.  The parties' arguments as to Keiland's demobilization costs thus largely mirror those related to Keiland's direct employee costs.  And Keiland's position falters on similar grounds.

In a cost-plus contract, charges for a contractor's own labor are subject to "strong scrutiny," and the party seeking costs must show "an agreement between the parties" to do so.  *Foster*, 310 So. 2d at 172; *see also Higgins*, 597 So. 2d at 1240.  As with its direct labor costs generally, Keiland fails to show any agreement with Weeks specifically to allow direct employee

––––––––––––––––––––––––––

[8] In determining that Weeks was "entitled to reimbursement for demobilization costs plus markup on these costs paid to Keiland," the district court offset these amounts against the total damages awarded to Keiland.  On appeal, Weeks does not question the district court's approach.

costs as part of its demobilization costs. Similarly, Keiland has not shown that it is entitled to attorneys' fees as part of demobilization. And Keiland is not entitled to a 21% markup on these expenses because, as the district court found, its demobilization costs arose post-termination, while Section 9 of the Contract entitles Keiland to the markup for "overhead and profit" for work "through the date of termination." Keiland thus has not shown that the district court abused its discretion in declining to award these demobilization costs. *See King*, 337 F.3d at 553.

Keiland's contention that Weeks waived its right to "clawback" $25,210.35 Weeks paid toward demobilization by failing to request the funds prior to the post-trial determination of damages also fails. Keiland contends that Weeks's failure to raise the "clawback" demand sooner prejudiced Keiland. But in its answer to Keiland's complaint, Weeks sought to recoup "[w]hatever the contract allows," a demand repeated in Hafner's deposition testimony. In fact, the record shows that Weeks requested an offset of previously paid demobilization costs multiple times, and that relief was well-within the district court's authority. *See* Fed. R. Civ. P. 54(c). Given that Keiland failed to show any entitlement to demobilization costs under the Contract, summary judgment for Weeks on this point, including an offset for funds Weeks had previously paid, was proper.

## C.

Keiland's final challenge is that the district court erred in finding Weeks was the prevailing party on the contract interpretation issue during the bench trial. As discussed *supra*, the district court construed the Contract, specifically Sections 5 and 9, to be ambiguous. The court then entered judgment against Keiland, the drafter of the disputed language, and adopted Weeks's interpretation of the Contract. The court calculated damages based on that interpretation. From those rulings, the district court determined that

Weeks was the prevailing party on the single issue at trial. Applying the Contract's Section 21, which provided for the prevailing party in any dispute to recover attorneys' fees, the court ordered Keiland to "pay all costs and expenses, including expert witness fees and attorneys' fees," Weeks incurred related to trial. The court did not err in concluding that Weeks prevailed on the contract interpretation issue.

We review legal determinations like the question of prevailing party status *de novo*. *See HDRE Bus. Partners Ltd. Grp., L.L.C. v. RARE Hosp. Int'l, Inc.*, 834 F.3d 537, 540 (5th Cir. 2016). "The district court's decision to grant or deny attorney fees is reviewed for abuse of discretion; factual findings are reviewed for clear error." *Alonso v. Westcoast Corp.*, 920 F.3d 878, 890 (5th Cir. 2019) (quoting *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008)); *see also Boes Iron Works, Inc. v. Gee Cee Grp., Inc.*, 2016-0207, pp. 7–8 (La. App. 4 Cir. 11/16/16), 206 So. 3d 938, 946 ("The trial court is vested with great discretion in arriving at an award of attorney fees." (citations omitted)).

"State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Under Louisiana law, attorneys' fees are permitted only when authorized by statute or contract. *Bamburg v. Air Sys., L.L.C.*, 53,848, pp. 10–11 (La. App. 2 Cir. 4/14/21), 324 So. 3d 213, 219. Contracts authorizing attorneys' fees "have the effect of law between the parties, and the courts are bound to give effect . . . to the true intent of the parties." *Melancon Equip., Inc. v. Nat'l Rental Co.*, 2007-1008, p. 4 (La. App. 3 Cir. 2/27/08), 978 So. 2d 1053, 1057 (quotations and citation omitted).

Keiland first argues that Weeks cannot be a prevailing party under Louisiana law because Weeks materially breached the Contract. Keiland reasons that the district court held that Weeks breached the Contract by

failing to pay Keiland in a timely manner. But as Weeks correctly argues, nowhere in any of the court's rulings did it find Weeks to have breached the Contract. Thus, Keiland's proffered cases standing for the proposition that a breaching party may not recover damages are inapposite. *Cf., e.g.*, *Stuart Services, L.L.C. v. Nash Heating & Air Conditioning, Inc.*, 2023-00015, pp. 1–2 (La. 3/14/23), 357 So. 3d 337, 338 (holding that a defendant cannot be found in breach but also receive attorneys' fees).

Second, Keiland asserts that the contract interpretation issue was "de minimis" and that prevailing party status cannot hinge on de minimis issues. However, Keiland, without Weeks's acquiescence, moved to bifurcate the issues of contract interpretation and damages, precipitating the bench trial to determine the Contract's meaning. As Weeks points out, Keiland stated in its motion for bifurcation that "[t]his [suit] is a contract claim," and "[t]he keystone issue in the suit is the interpretation of the compensation and termination provisions of that contract." By Keiland's own telling, then, the contract interpretation issue was not "de minimis," and the winner of the trial could therefore properly be classed the "prevailing party" as to the case's "keystone issue."

Lastly, Keiland contends *it*, not Weeks, was rightly the prevailing party because the district court awarded it damages. Weeks responds that it never contested that Keiland was owed some amount of money; Weeks merely disagreed as to the amount. Therefore, Weeks reasons the damages award to Keiland does not mean Keiland prevailed because the district court awarded those damages based on Weeks's interpretation of the Contract.

Weeks is correct. The district court (properly) construed the Contract against Keiland and awarded damages under Weeks's interpretation of the agreement. The award to Keiland notwithstanding, the court thus correctly determined that Weeks prevailed on the contract

interpretation issue at trial. Per the Contract, it follows that Weeks was entitled to attorneys' fees and costs stemming from successfully trying that issue. *See Trafficware Group, Inc. v. Sun Industries, LLC*, 749 F. App'x 247, 253 (5th Cir. 2018) (holding that "[a]lthough [contractor] had to pay [subcontractor] the amount remaining under the subcontract, the amount did not reflect any judgment of liability for breach of contract against [contractor] and was reduced by the damages award to [contractor]").

## D.

On cross-appeal, Weeks first challenges the district court's award of attorneys' fees and costs as too low. Weeks concedes that it prevailed only as to the contract interpretation issue, but it asserts that the court erred in determining that its pre-trial motions were not related to the contract interpretation issue and in excluding fees and costs incurred prior to bifurcation of the issues in September 2021. Narrowing the window for fees in these respects, Weeks reasons, led to the court's improper conclusion that Weeks' proffered billing data were overinclusive and vague. In the alternative, Weeks contends that even if some reduction in its requested fees and costs was warranted, the court's reductions were errant.[9]

"The trial court is vested with great discretion in arriving at an award of attorney fees." *Boes Iron Works*, 2016-0207, pp. 7–8, 206 So. 3d at 946. In its order awarding damages, the district court framed its analysis by noting that it was required to make an initial estimate of reasonable attorneys' fees based on prevailing billing rates and hours reasonably expended. Then, the

_____

[9] Other possible interpretations of Section 21 of the Contract notwithstanding, both parties travel under the premise that the Contract supports an award of *reasonable* attorneys' fees. Even Weeks, who challenges the attorneys' fees amount, urges the court towards *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983), as the case that "provides clear guidance on determining the hours that were reasonably expended on a case."

court was to adjust that estimate by applying the factors articulated in *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983).[10]  But the court stopped before performing even the initial calculation because it found Weeks's proffered evidence to be "overinclusive[] and vague[]" and "not sufficiently itemized and ascertainable to account for only those reasonably recoverable fees" incurred in litigating the contract interpretation issue at trial.

To remedy Weeks's ostensibly insufficient evidence, the district court made an alternative calculation of Weeks' attorneys' fees and costs, finding:

> that twenty percent of Weeks's reduced liability exposure is an appropriate measure of an award for attorney's fees . . . . [T]he amount recovered by Keiland against Weeks based on the [c]ourt's July 11, 2023 Judgment is $318,936.59.  Keiland demanded an award of $705,520.09.  The [c]ourt's July 11, 2023 Judgment . . . is $386,583.50 less than $705,520.09, the amount that Keiland sought . . . .  Thus, Weeks avoided $386,583.50 in potential liability.  Twenty percent of [that amount] results in an award in the amount of $77,316.70 for attorney's fees payable by Keiland to Weeks.

The district court also reviewed Weeks's requested costs but determined

---

[10] The *Hensley* factors, which "derive directly from the American Code of Professional Responsibility," are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

461 U.S. at 430 n.3 (citing *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

most were subsumed within the $77,316.70 total and awarded only an additional $342.17 for costs.

Tellingly, Weeks cites no cases suggesting the district court abused its discretion to the extent it excluded Weeks's pre-bifurcation costs and fees. And we do not read the district court's determination of fees as categorically excluding all pre-bifurcation expenses. Rather, the court found that it could not "accurately determine the hours reasonably expended on the bench trial and contract interpretation issue," and pointed to some of Weeks's pre-bifurcation fees as examples of Weeks's overinclusive evidence. Weeks fails to show the district court erred in its approach or, particularly, in finding that Weeks's evidence was vague and overinclusive such that the court was unable to determine what fees and costs were attributable to the contract interpretation issue as tried. *See Alonso*, 920 F.3d at 890.

Alternatively, Weeks asserts that even if a reduction in fees was appropriate, the district court's drastic reduction was an abuse of discretion. But we discern no reversible error. A trial court may reduce an attorneys' fees award "to the highest amount a reasonable factfinder could have awarded" if "it would be impossible to relate specific fees to the issues upon which the [party] did not prevail." *Bamburg*, 53,848, p. 11; 324 So. 3d at 219 (describing *LHO New Orleans LM, L.P. v. MHI Leasco New Orleans, Inc.*, 2006-0489 (La. App. 4 Cir. 4/16/08), 983 So. 2d 217). Here, the district court arrived at $77,316.70 for attorneys' fees, grounded upon its findings that Weeks's proffered evidence was "overinclusive[] and vague[]" and "not sufficiently itemized and ascertainable to account for only those reasonably recoverable fees" related to trial of the contract interpretation issue. These findings are not clearly erroneous on the record before us, and Weeks offers no caselaw to support that the district court abused its discretion as to the fee amount awarded, arguing instead merely that the district court unreasonably applied the *Hensley* factors. This argument lacks

merit.  We therefore uphold the award of attorneys' fees and costs to Weeks in the amount of $77,658.87.

## E.

Finally, Weeks contends the district court erred by awarding Keiland prejudgment interest and denying Weeks's post-offer attorneys' fees and costs.  The district court did not err in either respect.

"State law governs the award of prejudgment interest in diversity cases." *Harris v. Mickel*, 15 F.3d 428, 429 (5th Cir. 1994).  Under Louisiana law, "[w]hen the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due."  LA. CIV. CODE ANN. art. 2000.  "[W]hen a party prays for an award of interest in a pleading seeking a monetary judgment, the court lacks discretion to deny interest on the award." *In re succession of Banks*, 11-26 (La. App. 5 Cir. 6/29/11), 71 So. 3d 1086, 1099; *see* LA. CODE CIV. PROC. ANN. art. 1921.  We review a trial court's award of prejudgment interest for an abuse of discretion. *Imperial Chemicals Ltd. v. PKB Scania (USA), Inc.*, 2004-2742, p. 20 (La. App. 1 Cir. 2/22/06), 929 So. 2d 84, 98.  The court reviews the district court's application of Federal Rule of Civil Procedure 68 *de novo*, but "[a]ny factual findings concerning the circumstances under which Rule 68 offers are made are reviewed for clear error." *Hobbs v. Alcoa, Inc.*, 501 F.3d 395, 398 (5th Cir. 2007).  Keiland demanded interest in its petition, and the district court accordingly did not abuse its discretion in awarding it.

Nonetheless, Weeks argues this case is unusual because Weeks "did not know what to pay Keiland until receipt of its cost documents."  In Weeks's view, a court should deny interest in "peculiar circumstances" when equity militates against a defendant paying interest. *See Noritake Co. v. M/V Hellenic Champion*, 627 F.2d 724, 728 (5th Cir. 1980) ("Discretion to

deny prejudgment interest is created only when there are 'peculiar circumstances' that would make it inequitable for the losing party to be forced to pay prejudgment interest."); *see also Shallow Waters Equip. LLC v. Pontchartrain Partners, LLC*, No. 21-949, 2022 WL3755041, at *13 (E.D. La. Aug. 30, 2022). But *Noritake* and *Shallow Waters* are inapposite because those cases involved interest awarded under federal admiralty law, not Louisiana law.

Instead, this case again mimics *Trafficware*, in which this court affirmed an award of prejudgment interest, even though the "amount was unascertainable in light of the disputes about breach of contract and other damages." 749 F. App'x at 254. Weeks fails otherwise to show any error in the district court's awarding prejudgment interest in this case.

Similarly, Weeks's argument that the court should have awarded its attorneys' fees and costs incurred after Weeks made an offer of judgment lacks merit. In cases where "the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. Proc. 68(d); *cf. Antill v. State Farm Mut. Ins. Co.*, 20-131, pp. 9–10 (La. App. 5 Cir. 12/2/20), 308 So. 3d 388, 410 (applying Louisiana Code of Civil Procedure article 970, which "provides for the payment of costs when an offer of judgment has been made and rejected").[11] In interpreting Rule 68 offers of judgment, "[c]ourts

---

[11] A threshold question is whether to apply federal law or Louisiana law in comparing the offers of judgment. *Cf. Ashland Chemical Inc. v. Barco Inc.*, 123 F.3d 261, 264–65 (5th Cir. 1997) ("We therefore must determine whether the Local Rule is procedural . . . or substantive."). "[I]n a diversity case a federal court must apply the substantive law of the state while following federal procedural rules. Unfortunately, a clear and obvious distinction between rules of procedure and rules of substance does not always exist." *Id.*; *see also* 12 Charles Alan Wright & Arthur R. Miller Federal Practice and Procedure § 3001.2 (3d. ed. 2024) (discussing the complexities of

apply general contract principles." *Basha v. Mitsubishi Motor Credit of Am., Inc.*, 336 F.3d 451, 453 (5th Cir. 2003). As Weeks concedes, the court's total award to Keiland of $118,936.59 exceeds Weeks's $100,000 offer of judgment, which was, per the offer's terms, "inclusive of all costs, fees, and interest." Because we affirm the court's final award to Keiland, we also affirm the court's denial of Weeks's motion for attorneys' fees and costs accrued after its Rule 68(d) offer of judgment.

## III.

The district court correctly determined that the Contract between Weeks and Keiland was ambiguous and then properly resolved the ambiguity against Keiland, as the drafter of the disputed contractual language. From its bench trial determination as to liability under the Contract, the district court properly entered summary judgment as to the damages owed Keiland by Weeks. The district court's ensuing calculations of attorneys' fees and prejudgment interest reveal no reversible error.

For the reasons discussed, the judgment of the district court is

AFFIRMED.

---

applying federal or state law to Rule 68 offers of judgment). But we may pretermit the issue here because Weeks's argument fails regardless of whether federal or state law applies.