# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
January 29, 2025

Lyle W. Cayce
Clerk

No. 23-30824

McDonnel Group, L.L.C.; All Star Electric, Incorporated; Jung, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

Starr Surplus Lines Insurance Company; Lexington Insurance Company,

*Defendants—Appellees*,

_____

All Star Electric, Incorporated; McDonnel Group, L.L.C.; Jung, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

Lexington Insurance Company; Starr Surplus Lines Insurance Company,

*Defendants—Appellees*,

_____

Jung, L.L.C.,

*Plaintiff—Appellant,*

*versus*

STARR SURPLUS LINES INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY,

*Defendants—Appellees.*

_____

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:18-CV-1380, 2:19-CV-2230,
2:19-CV-10462

_____

Before SOUTHWICK, HAYNES, and DOUGLAS, *Circuit Judges.*

LESLIE H. SOUTHWICK, *Circuit Judge*:

This dispute involves the interpretation of a flood deductible provision in a builder's risk insurance policy. The district court granted summary judgment for the insurers after holding that their interpretation of the deductible's language was correct. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

A prior appeal of this case details the relevant facts. We repeat the most significant ones:

> Beginning in 2014, McDonnel served as the general contractor for the renovation and redevelopment of Jung's property ("the project"). In early 2015, McDonnel took out insurance from Starr Surplus Lines Company and Lexington Insurance Company (jointly, the "insurers").
>
> During the spring and summer of 2017, the project suffered a number of water intrusions, culminating in a heavy

2

rain that caused extensive damage. McDonnel submitted a notice of loss to the insurers, claiming damages of $3,226,164.30.

The parties' divergent views on the proper deductible give rise to the dispute. The plaintiffs assert that the correct flood deductible is $500,000 and that the insurers should therefore pay a claim of $2,726,164.30 — the flood damage less $500,000. The insurers contend that the proper deductible is $3,443,475. Thus, the claim, in their view, fell $217,310.70 below the deductible, entitling the plaintiffs to nothing under the policy.

McDonnel sued in February 2018. The plaintiffs moved for partial summary judgment, requesting that the district court adopt their interpretation of the flood deductible amount, and the insurers filed an opposition and a cross-motion for summary judgment. On February 11, 2020, the court granted the insurers' cross-motion and denied the plaintiffs' motions. The court determined that the policy language was "clear and unambiguous" regarding the flood deductible and adopted the insurers' interpretation.

*McDonnel Grp., L.L.C. v. Starr Surplus Lines Ins. Co.*, 15 F.4th 343, 345–46 (5th Cir. 2021) (footnote omitted). The plaintiffs appealed. This court concluded that the policy's deductible language was ambiguous and reversed the district court's ruling. *Id.* at 351. We remanded "for the district court to determine whether extrinsic evidence resolves the ambiguity" and "whether the presumption in favor of coverage in the case of an ambiguity applies here." *Id.* "We set no limits on what proceedings the district court should conduct." *Id.*

The district court ordered the parties to submit supplemental briefing on "the ambiguity issue, including the consideration of extrinsic evidence, and the presumption issue." The parties filed cross-motions for partial summary judgment. The district court reviewed the parties' briefing and

extrinsic evidence, finding the evidence resolved the ambiguity in favor of the insurers. Because the extrinsic evidence resolved the ambiguity, the district court did not reach the second question: Whether the presumption in favor of coverage applies here. In a footnote, the district court wrote that if it were required to reach the issue, it would find the presumption did not apply. The plaintiffs timely appealed.

## DISCUSSION

McDonnel contends the district court erred in granting the insurers' motion for summary judgment because (1) the district court erred in its interpretation of the extrinsic evidence; (2) there is a genuine issue of material fact; (3) the court usurped the role of the jury in interpreting extrinsic evidence; and finally, (4) the court erred by failing to determine whether the presumption in favor of coverage applied. We address the first three issues as components of our analysis of whether the court erred in granting summary judgment. We address issue four separately.

### I.    *Summary judgment*

We review a district court's grant of summary judgment *de novo*. *Angus Chem. Co. v. Glendora Plantation, Inc.*, 782 F.3d 175, 179 (5th Cir. 2015). The parties agree Louisiana law governs the insurance policy. *McDonnel,* 15 F.4th at 346. When interpreting a contract under Louisiana law, courts must determine the common intent of the parties. La. Civ. Code Ann. art. 2045. "[T]he parties' common intent is deemed objective in nature, which means that in some cases it may consist of a reconstruction of what the parties must have intended, given the manner in which they expressed themselves in their contract." *Id*. at cmt. b. When a contract involves technical matters, "[w]ords of art and technical terms must be given their technical meanings," and words that could have different meanings should be interpreted in the way that best aligns with the contract's purpose.

*Id.* arts. 2047, 2048. When interpreting a contract, "doubtful provision[s] must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." *Id.* art. 2053. "Usage . . . is a practice regularly observed in affairs of a nature identical or similar to the object of a contract subject to interpretation." *Id.* art. 2055. A determination of the parties' intent is generally a question of fact inappropriate for summary judgment unless there is no genuine issue as to any material fact. *SRG Baton Rouge II, L.L.C. v. Patten/Jenkins BR Popeye's, L.L.C.*, 391 So. 3d 73, 80 (La. Ct. App. 1st Cir. 2024).

The plaintiffs offered several documents as extrinsic evidence. First, the plaintiffs submitted a December 10, 2014, email sent to McDonnel by its broker that included the brokers own summary of the coverages and deductibles within the quote. McDonnel's broker wrote that the policy would "include Flood coverage [in] the amount of $10M. It will have a deductible of $500,000." The plaintiffs also submitted a February 11, 2015, letter sent by McDonnel's broker to Jung that summarized the quote and "outlin[ed] the insurance coverage[] that will be ready to be put into place once the closing date has been established." The summary included the deductible at issue stating that a "[s]ublimit of $10,000,000 will apply to the peril of flood" and the deductible for damage caused by flood "will be $500,000." Finally, the plaintiffs submitted a letter written by McDonnel's broker dated February 23, 2015, that formally provided the insurance quotes from both insurers, identified a $10,000,000 flood sublimit, and listed the flood deductible as "5% VARTOL minimum $500,000." The plaintiffs contend the email and letters resolved the ambiguity in their favor because they show that the parties intended the flood deductible to be $500,000.

The insurers submitted two formal policy binders, one from Lexington and one from Starr. The binders were issued to McDonnel's

broker in February 2015 and stated the flood deductible would be "5% VARTOL minimum $500,000." The insurers submitted an internal email sent by McDonnel's broker to another broker in the same firm explaining, contrary to his prior summaries, that "[t]he industry interpretation and intent is to have the [percent] apply to the amount of the contract cost that would be at risk." The insurers also offered an advisory article written by a disinterested insurer. The article provided, in relevant part:

> Where flood is the cause of loss, the deductible is typically higher and, in some policies, may be expressed as a percentage of property value rather than a specified figure . . . On a builders' risk insurance policy, the deductible may be based on the value of the project at the time of loss under a value-at-risk-at-time-of-loss (VARTOL) clause.

The insurers also submitted a memorandum in which a disinterested insurer explained to Jung that "in [their] opinion . . . it [was] doubtful to unlikely that a recovery/indemnification of [the flood] claim[] under this Policy is likely." That memorandum stated the flood deductible was "5% of the Total Insured Value = $3.8MM." Finally, the insurers offered deposition testimony of their own loss adjuster and expert witness. The insurers' loss adjuster testified that "VARTOL" as used in the builder's risk insurance industry means "the value of the property and what has gone into it at the date of loss." "VARTOL," as the loss adjuster understood it, meant "the value of all the property that is there." The insurers' expert witness similarly testified that the insurance industry's historical application of the term "VARTOL" is based on a percentage of the total value of a project, even when the policy includes a flood coverage sublimit.

The district court determined that the root of the dispute could "be traced to the error-ridden summaries" sent by McDonnel's broker. The district court found that the plaintiffs' extrinsic evidence was not reliable

evidence of the parties' intent because the summaries contained inaccuracies and were not communicated to the insurers. The district court noted that all quotes and binders provided that the deductible would be "5% VARTOL minimum $500,000," and while that language alone could be ambiguous, the insurers' additional extrinsic evidence showed the "understood and longstanding industry use of the term VARTOL" to mean the total value of the project at the time of loss.

The plaintiffs contend the district court erred in its interpretation of the extrinsic evidence because the binders contain the same policy language this court has previously ruled was ambiguous. *See McDonnel* 15 F.4th at 351. This is not an error. We determined the policy language was ambiguous and remanded for the district court to consider extrinsic evidence because, prior to the appeal, the district court had not. *Id.* The extrinsic evidence offered by the insurers included more than the same policy language. The insurers provided a memorandum of disinterested insurers, deposition testimony of the plaintiffs' own broker, and an article that each showed the "understood and longstanding" meaning of the term "VARTOL."

The plaintiffs, on the other hand, failed to offer extrinsic evidence sufficient to raise a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252–54 (1986) (holding that in ruling on summary judgment, a judge must view evidence "through the prism of the substantive evidentiary burden"). By the plaintiffs' own reasoning, the February 23, 2015, letter did not resolve the ambiguity either way because it repeats the same policy language. Thus, the only evidence the plaintiffs offered to counter the insurers' substantial extrinsic evidence was an email and a letter by their insurance broker.

The plaintiffs also argue the district court erred in relying on post-flood extrinsic evidence because "this [c]ourt was clear on remand that

'[p]arol evidence should only be used to determine the intentions of the parties at the time the contract was made, not after the fact.'" The plaintiffs misunderstand our import. The district court may examine extrinsic evidence to determine the intentions of the parties at the time of contracting. *See* La. Civ. Code Ann. art. 2053. For extrinsic evidence to resolve the ambiguity in the policy, that extrinsic evidence must relate to the understandings and intentions of the parties at the time of contracting, not to what the parties may have believed at some point after the policy had been issued. *Id.* However, the extrinsic evidence itself need not be dated prior to contracting.

Given the definition of the term "VARTOL" in builder's insurance policies, the plaintiffs' inadequate evidence showing the term was intended to mean otherwise, and the charge of all insureds to read and know their policy provisions, we agree with the district court. The extrinsic evidence resolved the ambiguity in favor of the insurers as a matter of law, leaving no genuine issue of material fact regarding the deductible.

### II.      *The presumption in favor of coverage*

We now review McDonnel's final argument: the district court failed to determine whether Louisiana's presumption in favor of coverage applies. The district court reviewed all extrinsic evidence to determine whether the evidence resolved the ambiguity. After a review of the presented evidence, the district court determined the extrinsic evidence resolved the ambiguity in favor of the insurers' interpretation of the deductible. Having resolved the ambiguity, the district court stated it did not need to determine whether the presumption of coverage in favor of the insured applied under these circumstances. The plaintiffs contend that was error.

Louisiana law provides that "[i]n case of doubt *that cannot be otherwise resolved*, a provision in a contract must be interpreted against the party who

No. 23-30824

furnished its text." LA. CIV. CODE ANN. art. 2056 (emphasis added). We recently held that

> [w]hen a contract is ambiguous, the trier of fact must resolve the factual issue of intent. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, [and] the conduct of the parties before and after the formation of the contract. *If the contract remains ambiguous*, and if there are two or more reasonable interpretations, the contract is construed against its drafter.

*Keiland Constr., L.L.C. v. Weeks Marine, Inc.*, 109 F.4th 406, 416 (5th Cir. 2024) (emphasis added)(citations omitted).

Here, the district court reviewed all extrinsic evidence to determine whether the evidence resolved the ambiguity. The district court determined the extrinsic evidence resolved the ambiguity in favor of the insurers' interpretation of the deductible. Having resolved the ambiguity, the district court did not err in failing to reach the presumption in favor of the insured.

AFFIRMED.

No. 23-30824

HAYNES, *Circuit Judge*, dissenting:

I respectfully dissent because I believe that there is still ambiguity over the contracted-for deductible amount. Because of this lack of clarity, I would REVERSE the decision of the district court and REMAND for further proceedings.

Last time this case was on appeal, we held that the deductible provision of the contract was ambiguous. *See McDonnel Grp., LLC v. Starr Surplus Lines Ins. Co.,* 15 F.4th 343, 347 (5th Cir. 2021) (evaluating policy language: "5% of the total insured values at risk at the time and place of loss subject to a $500,000 minimum deduction as respects . . . FLOOD."). Determining that both the plaintiffs and the insurers put forth reasonable interpretations of the provision's plain language, we remanded to see if extrinsic evidence would resolve the ambiguity. *Id.* at 351. We instructed the district court to consider only extrinsic evidence that illuminated the parties' intent "at the time the contract was made, not after the fact." *Id.* at 351 n.16 (quotation omitted).

A district court should only grant a summary judgment motion if there is "no genuine dispute as to any material fact." FED. R. CIV. P. 56(A). Under Louisiana contract law, that means the submitted extrinsic evidence must be so one-sided that the parties' mutual intent would be apparent to all reasonable jurors. *See Dixie Campers, Inc. v. Vesely Co.*, 398 So.2d 1087, 1089–90 (La. 1981); *Reynolds v. Select Props., Ltd.,* 634 So. 2d 1180, 1183 (La. 1994). Otherwise, a court should deny the motion; a jury must evaluate the extrinsic evidence and see if it can decipher the mutual intent of the parties. *SRG Baton Rouge II, LLC v. Patten/Jenkins BR Popeye's, LLC,* 2023-1204 (La. App. 1 Cir. 5/31/24), 391 So. 3d 73, 80.

In my perspective, the evidence presented on remand was not so one-sided as to establish the insurers' interpretation as a matter of law. The

binders contain language that we have *already* determined to be ambiguous. The email and letters, in contrast, support the *plaintiffs'* interpretation. The mere fact that all other evidence postdates the flood, arising when the parties were already disputing over the meaning of the deductible provision, undermines its value. Thus, viewing the evidence in the light most favorable to the plaintiffs, as we are required to do, there is certainly enough for a jury to find that the parties intended only a $500,000 deductible at the time the contract was executed.

Moreover, the district court's factual determinations were inappropriate for summary judgment. For example, the district court found the plaintiffs' evidence "not reliable" because the broker's summaries "inaccura[tely]" described the content of the insurance policy. Not only is the reliability of evidence regarding the meaning of contractual provisions a quintessential question for the factfinder, *see Maney v. Bennett,* 97-0840 (La. App. 4 Cir. 11/19/97), 703 So. 2d 152, 156, but the conclusion is based on circular logic. The only way the summaries could have been "inaccurate" is if the flood deductible is indeed 5 percent of the total insur*able* value—the precise question the parties are disputing.

Another example: the district court credited the testimony of the insurers' experts, who both stated that the term VARTOL is commonly understood to mean the value of the project at the time of the loss without regard to the sublimit. But whether expert testimony is credible is for a jury to decide. Moreover, the plaintiffs' emails and letters directly contradict this testimony, as their own insurance broker (presumably an expert in the field) told them that the deductible would be 5 percent of the insur*ed* value. This is record evidence creating a dispute of material fact.

Considering the extrinsic evidence lent credibility to both interpretations of the contract, it was error for the district court to decide this

No. 23-30824

matter on summary judgment. Accordingly, I would REVERSE the decision of the district court and REMAND for further proceedings.[1] Because the majority opinion affirms, I respectfully dissent.

---

[1] Because I believe that the question of the parties' mutual intent should have been submitted to a jury, I agree that it was unnecessary for the district court to decide whether the presumption in favor of coverage applied until after the jury evaluated the extrinsic evidence. LA. CIV. CODE ANN. art. 2056; *Keiland Constr., LLC v. Weeks Marine, Inc.*, 109 F.4th 406, 416 (5th Cir. 2024).